No. 781

First Circuit

## MILNER v. LOUISIANA HIGHWAY COMMISSION ET AL.

(May 5, 1931. Opinion and Decree.)
(June 16, 1931. Rehearing Refused.)
(July 17, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Fred G. Benton, of Baton Rouge, attorney for plaintiff, appellant.

L. L. Morgan, of Covington, attorney for Louisiana Highway Commission, defendant, appellee.

Charles A. Holcombe, of Baton Rouge, attorney for Union Indemnity Company, defendant, appellee.

ELLIOTT, J. Mrs. Kate Milner, widow of Benjamin B. Milner, claims of Louisiana Highway Commission and Union Indemnity Company the sum of $6,000, payable in 300 weekly installments of $20 each, and the further sum of $100 on account of the burial expenses of her husband. Her claim is for the common benefit of herself and Aurelius E. Milner, her minor son, and is based on the Employers' Liability Act of this state.

She alleges that Benjamin B. Milner, her husband, was an employee of the Louisiana highway commission, his duty being to inspect timber and materials to be used by the commission in the construction of roads and bridges in this state.

That he entered the ferry at Natchez, Miss., occupying an automobile belonging to the Louisiana highway commission, for the purpose of crossing the Mississippi river, on his way to Monroe, La., in connection with the duties of his employment and was, without fault on his part and through the failure of his automobile brakes to work, accidentally precipitated into the Mississipi river and drowned.

That Union Indemnity Company of New Orleans has insured the Louisiana highway commission against compensation for which it is liable.

That said Union Indemnity Company is therefore obligated to pay the amount due her and her son on account of the death of her husband.

That Aurelius E. Milner, her son, born of her marriage with said Milner, was dependent on his father for support and is now, due to his father's death, dependent on her.

That her husband was earning and being paid a weekly wage of $43.75, at the time of his death.

That she is therefore entitled to compensation in amounts and payable as stated, and to recover on account of the burial expenses of her husband in the sum claimed.

The highway commission and the Union Indemnity Company answered, each admitting in their answers most of the allegations in the petition of the plaintiff. But they each deny that her husband, said Benjamin B. Milner, met his death while acting within the scope of his employment. They allege that he was on a leave of absence at the time, which had been granted him by his employer. That he was not at the time of his death performing any duties connected with his employment. That defendants are not liable for compensation on that account.

From a judgment rejecting plaintiff's demand, plaintiff has appealed.

The evidence shows that plaintiff's husband was employed by Louisiana highway commission as inspector of timber and materials used by the commission in constructing roads and bridges in this state.

His wages were $175 per month. In the performance of his duties he went from place to place in and outside this state as ordered and directed by the officers in said highway commission. For the purpose of going from place to place on his inspection trips he was furnished by the commission with an automobile and all his expenses were paid. His entire time belonging to his employer. His family lived at Monroe, La., and his home was there with his family. When not engaged in inspecting work for his employer, he stayed at home.

While doing inspection work in conformity with his employment at Jackson, Miss., on March 3, 1930, he wrote to the Louisi-

ana highway commission at Baton Rouge, La., from which we excerpt as follows:

"Wish to advise or ask, if consistent and if I can finish here, to leave Friday, you let me go home for week end."

After further stating that he had left his car at Hazelhurst to be repaired, he says:

"I'll go to Hazelhurst by train from here, get car and go any place, of course, but if O K to go home by way of Natchez."

He received while at Jackson, Miss., the requested permission by telegram dated March 6, 1931, as follows:

"Satisfactory to go to Monroe when through at Jackson. Advise when you leave."

He received and acknowledged this wire the same day it was sent him, writing the Louisiana highway commission at Baton Rouge:

"I have your wire of this date. Thanks. I will complete here Friday evening late and figure to go by bus, leaving here 8:30 P M Friday night to Hazelhurst where I left my car. Then Saturday 8 A M in my car via Natchez Miss to Monroe La.—home."

But on March 7, 1930, he again wrote from Jackson, Miss., to the Louisiana highway commission at Baton Rouge, saying: "Since writing you Saturday P. M. 6th, I now see I'll do well to finish by Sunday A. M., 8th, then leave, as I wrote you, for Monroe."

He evidently left Jackson at about 12 o'clock Saturday, went to Hazelhurst and got his car, and started on his trip to Monroe via Natchez. But car trouble stopped him on the road Saturday night and he did not reach Natchez until Sunday morning about 9 o'clock a. m. In a short time after reaching Natchez, he recom-

menced his trip to Monroe which required him to enter the ferry there for the purpose of crossing the Mississippi river. He started his car for the purpose of going into the ferry, with the result that his car and himself were accidentally precipitated into the river and he was drowned.

So the question is: Was plaintiff's husband, in going from Jackson, Miss., to Monroe, La., in pursuance of his request for permission to "go home for week end" and the consent of the Louisiana commission that he might do so, engaged in performing "service arising out of and incidental to his employment in the course of his employer's trade, business or occupation," within the sense and meaning of the Employers' Liability Act of this state? Act No. 20 of 1914, as amended by Act No. 85 of 1926.

He was at the time driving the automobile furnished him by the Louisiana highway commission for the purpose of going from point to point in doing the inspection work which he was employed to do. But in using it to go home, his use was that of a licensee. He had no right to go home for the week-end, except by the leave of the Louisiana highway commission. In going home, he was traveling on the time of the commission, with the commission's consent previously obtained. In using the automobile for the purpose of going to Monroe, however, it was not being used for the purpose of making an inspection. In going home for the week-end, the trip was not for the performance of any service arising out of and incidental to his inspection work, but in order to visit his family—his private affair. The fact that he was being paid by the month, and that while making the trip and spending the week-end, his wage was going on, did not make the trip the

performance of service arising out of and incidental to his employment.

His death occurred in the course of his employment, but it was during a trip undertaken for the gratification of his own personal desire, and not in the performance of service arising out of and incidental to his employment.

The judgment appealed from is correct. Judgment affirmed.

Plaintiff and appellant to pay the cost in both courts.