WALKER v. MILLS ENGINEERING CONST. CO. et al.*

No. 1265.

Court of Appeal of Louisiana. First Circuit.

Jan. 22, 1934.

Pujo, Bell & Hardin, of Lake Charles, for appellants.

Hawkins & Pickrel, of Lake Charles, for appellee.

LE BLANC, Judge.

Mills Engineering Construction Company, an ordinary partnership composed of Fred Mills, Pelham Mills, and W. P. Mills, was engaged in the construction of a paved highway for the Louisiana highway commission in the parish of Beauregard on the road leading from De Ridder in said parish to Lake Charles in Calcasieu parish. They employed quite a large number of people, some being skilled and others ordinary laborers. They subcontracted the hauling of the material, such as sand, gravel, and cement, which went into the pavement, to the partnership of Fuller & Cole. To do their hauling, Fuller & Cole used what are referred to as "dump" or "batch" trucks. These trucks hauled the material from De Ridder to the concrete mixer wherever it was stationed on the road during the course of construction.

James Walker, colored, was employed by Mills Engineering Construction Company, doing work around or back of the mixer. He lived in De Ridder and rode to work every day on one of the dump trucks used by Fuller & Cole in hauling material to the mixer. In the evening, he invariably returned on one of those same trucks. On the evening of July 18, 1931, when ready to leave work and return home, he attempted to board one of the dump trucks being driven by James Corbett. The truck was then moving very slowly, but nevertheless his grip slipped in some manner as he tried to get aboard. He fell and was severely injured when the truck ran over him. His accident was reported to the Union Indemnity Company which carried liability insurance for Mills Engineering Construction Company and in due time he was paid compensation at the rate of $9.75 per week. In December, 1932, the Union Indemnity Company stopped payments, the evident reason being that it had become insolvent and its affairs had been placed in the hands of receivers. Walker then instituted this suit against Mills Engineering Construction Company and the individual members of the partnership to recover the additional compensation that was due him, as he claims that he is totally and permanently disabled by reason of his injury. In his petition, the name of Fred Mills is not mentioned as one of the partners, and consequently judgment is not asked for as against him.

Defendants do not dispute the nature and extent of the plaintiff's injury, their sole defense being that he was not injured while performing services arising out of or incidental to his employment inasmuch as he had failed to use the means of transportation from work which they had provided for him, but, instead, had endeavored to board a truck not fitted for transportation of passengers, but for the hauling of material, and that said truck belonged to other parties over whom they had no control save as to result of the work performed. From a judgment decreeing compensation against them at the rate of $5.85 per week for a period of 400 weeks subject to a credit of $624 for payments made by their indemnitor, the defendants have appealed.

The dump truck on which plaintiff rode to work each day and returned home did not belong to the defendants, and they had no control over it, and it cannot be said to have been a means of transportation furnished by them for their laborers. The real issue, therefore, is whether in riding on it plaintiff did so with the express or implied consent of his employers and can hold them liable in compensation as for injuries sustained by him while in the scope of his em-

ployment. The solution of that issue rests on the testimony in the case, the preponderance of which, we agree with the learned trial judge, is in favor of the plaintiff.

The road being constructed by the defendants reached a distance of eleven miles from De Ridder when work was first started. In addition to the common labor which they used, defendants had imported the more skilled laborers from Mississippi and other parts of Louisiana. For these, they maintained a camp at Tulla and used a Chevrolet truck of their own to transport them from camp to the job. There is testimony on the part of defendants also that this truck went to De Ridder to take the local labor from there to work, although there is conflict on that point. At any rate, it was necessary for the laborers residing in De Ridder to have some means of transportation, as they certainly could not walk to work, and, besides, the desirable thing on defendant's part, as we infer, was for that labor to be on the job as soon as work started. It was practically impossible, as we understand the situation, for the truck furnished by defendants, to have transported all their labor, both from the camp and from De Ridder in time for when work began, so the practice was started, at the very beginning of the work, by the laborers residing at De Ridder, of boarding the dump or batch trucks as they left that place early in the morning with their first load, and getting to work in that way. Ten colored employees besides plaintiff testified that such had been their almost unbroken practice, and most of them, if not all, state that very frequently one of the defendants was present when they boarded the truck and gave them no order or instruction not to do so. In the afternoon, these laborers finished work some time before those working at the mixer, and, instead of waiting any longer than was necessary to get home, they invariably got aboard of one of the dump trucks again which carried them into De Ridder. Usually at this time, one of the bosses was present and saw them do this and never remonstrated with a single one. Indeed, there is testimony to the effect that on the very occasion when plaintiff was injured one of the Mills brothers was standing right near the truck which another employee had already boarded and which plaintiff was attempting to board, and had every opportunity of seeing what was going on. The defendants themselves and several of their witnesses testify about the strict rules and orders that had been given against riding on these dump trucks, but it strikes us that, had the rules been so stringent, those colored employees would not have been so bold as to violate them in the presence of their employer. Some of these witnesses go further and swear positively that, on one or two occasions, W. P. Mills, the oldest of the partners and father of the other two, hailed passing dump trucks himself and had them stop to pick some of the laborers up. It is a bit significant that this Mr. Mills was not called as a witness to deny such testimony, and his absence from the witness stand is not accounted for.

We have given due weight to the testimony of defendants and their several witnesses to the effect that there were rules against employees riding to work and back home on these dump trucks, and, further, that specific orders to that effect had been given in certain instances, but the fact remains that not one of the eleven negroes who testified for plaintiff, nor the latter, had ever been given such instructions, and none of the defendants and their foreman could positively recall any particular one to whom they had communicated the orders. The testimony of these negro witnesses is not impeached in any manner, and there is nothing to show that it was influenced by any improper motive. An effort was made to show that it was rehearsed testimony, but we are of the opinion that it was not.

A fair estimate of the evidence as a whole leads to the conclusion that, whilst defendants did have a truck that was used for the transportation of their laborers, it certainly was not used to transport them all, and that, to their knowledge or that of their foreman, their employees who lived in De Ridder habitually went to work on the dump trucks which hauled material to the job and returned home on them, and, if defendants did not encourage such practice, they at least condoned it by their silence and inaction. These negroes, unfamiliar no doubt with the different business and legal relations that exist between a contractor building a paved highway and the subcontractor who hauled material on the job, could easily have believed that these trucks belonged to their employers, and, as they rode on them unmolested, they no doubt thought that they were the means of transportation furnished them to go to and from their work.

■■ The rule that an employee may recover compensation when injured on the way to or from work in a conveyance furnished by the employer within the contemplation of the employment contract has been extended to cover those cases where, if there is no express contract to that effect, one may nevertheless be implied from the acts of the employer in tacitly permitting him to ride to work and back home on a truck or other conveyance which is used for some purpose in connection with the work that is going on. Mahaffey v. Mill Creek Lumber Co. (La. App.) 147 So. 834; Keyhea v. Woodard-Walker Lumber Co., Inc. (La. App.) 147 So. 830; Thompson et al. v. Bradford Motor Freight Line et al. (La. App.) 148 So. 79. Injuries to an employee under such circumstances are held compensable as having been sustained in an accident "arising out of and in the course of the employment." It is our conclu-

sion that the plaintiff's case comes under the rule as herein stated, and that he is entitled to recover compensation.

In plaintiff's petition it is alleged that he was paid compensation for a period of one year and three months or up until October 10, 1932. In testifying, however, plaintiff states that he was paid compensation by the Union Indemnity Company at the rate of $9.75 per week, up to and until December 16, 1932. This makes a difference of nine weeks which the district judge seems to have overlooked in allowing the defendants credit for the payments made by their indemnitor. In money, that amounts to the sum of $87.75, and the total amount of credit to be allowed therefore should be $711.75, instead of $624, as decreed in the judgment appealed from. The judgment will therefore have to be amended in that respect.

For the reasons stated, it is therefore ordered that the judgment appealed from be amended by increasing the credit to be applied on the award of compensation therein made from the sum of $624 to the sum of $711.75, and that, as thus amended, it be affirmed.