The plaintiff brought this suit against the above defendant as the carrier of workmen's compensation insurance for the Teche Lines, Inc., to recover the sum of $6,000 as compensation for herself and her two minor children on account of the death of her husband and the father of the minors, the compensation to be paid *Page 407 
in 300 weekly installments of $20 each, plus $250 for funeral expenses. It is alleged that the said deceased was employed by the Teche Lines, Inc., as a traveling auditor and traffic representative whose duty it was to check the various stations of the bus company and make daily reports of the condition of these stations as a result of his inspection and investigation; that he was furnished an automobile by his employer in which to make the various points required of him in his itinerary of inspection, and all of his expenses were paid while on these trips; that said deceased, on May 26, 1938, made his inspection of certain bus stations from Independence down to New Orleans and proceeded to the office of his employer in New Orleans by means of the automobile furnished him for his work and discussed with his superiors traffic and other matters relative to his employer's business; that the deceased and Mr. Paul S. Hennessey, General Traffic Manager, and Mr. William Caldwell, Chief Clerk, got in the car furnished the deceased as aforesaid, and the three drove out the Gentilly Road with the intention of eating supper at some "eating place" and there to continue the discussion of the employer's business; that the deceased had not made out his daily report and had not finished his day's work; that, on the way out to supper, the car in which they were riding ran into an open draw bridge over the Industrial Canal and before the car could be stopped, it plunged into the canal, instantly killing Evans.
The defendant filed an exception to the jurisdiction of the court ratione personae, together with an exception of vagueness, and with reservation of these exceptions, filed an answer wherein the principal issue in the case was raised, that is that the deceased was not performing services arising out of his employment, or incidental thereto, at the time of his accidental death.
Both exceptions were overruled by the court, and after a trial, the court rendered judgment in favor of plaintiff as prayed for in her petition. The defendant has appealed, and re-urges the exception to the jurisdiction of the court, but has abandoned the exception of vagueness.
The exception to the jurisdiction of the court is based on the ground that, as the accident happened in the Parish of Orleans and the employer is domiciled in that parish, the court of East Baton Rouge Parish had no jurisdiction over the defendant insurance company in that parish, although it has a domicile in that parish for the purposes of jurisdiction by reason of being a foreign insurance company doing business in this State. Counsel concede that the question raised by this exception has been decided adversely to their contention in the recent case of Mack v. W. Horace Williams Co. et al., 200 La. 1042, 9 So.2d 406. But they contend that the Supreme Court in deciding that case did not take into consideration Section 39 of Act 20 of 1914, as amended by Act No. 38 of 1918, which provides that the word "court" wherever used in the act shall mean the court having jurisdiction over the employer in a civil action; that the Court of East Baton Rouge Parish had no jurisdiction over the employer of the deceased Evans in this case, and for that reason has no jurisdiction over the employer's insurance carrier.
As counsel frankly admit that this same point was presented to the Supreme Court in the Mack case, they practically concede that we have no alternative but to follow the ruling in the Mack case and affirm the ruling of the trial judge in overruling the exception in this case. We agree that there is nothing else for us to do but affirm the action of the trial judge in overruling this exception.
There is not a great deal of dispute as to the facts in the case. Evans drove into the bus station of the Teche Lines late in the afternoon on the day of the fatal accident after he had made one of his daily inspections of stations. Hennessey met Evans at the bus station by chance around 6:00 o'clock P.M., and they went to the office of the company on Rampart Street where Hennessey worked in his office for an hour or so. Evans sat on the outside of Hennessey's private office while the latter finished some work he had to do, it having been agreed that these two, together with Caldwell, the chief clerk, would go out to the lakefront for a seafood supper. While waiting for Hennessey just outside the latter's private office, Evans called the Monteleone Hotel and made reservations for the night. At this time Evans had not made out his report of his day's work, these reports frequently being made by him in his hotel room when he was away from home (Evans lived in Baton Rouge).
Evans would come into New Orleans about once a week and discuss with the auditor's office and the traffic manager matters *Page 408 
relating to the company's business. His reports were sent in daily as he made these inspections on the road, and it seems that these periodic trips were made to New Orleans for the purpose of going into more details with reference to any matters that Evans found while on his itineraries. In addition to furnishing Evans with a car and the expense of its operation, he was also paid all of his expenses for lodging and meals while away from home. It seems that he was also given the privilege of using this car for pleasure — or at least no serious objection seems to have been made by the bus company for him to use the car for that purpose. On a previous trip to New Orleans, Evans and Caldwell, together with another employee of the bus company, had arranged to go out to Pontchatrain Beach to get a seafood supper, but when it developed that the other employee could not go, Hennessey was invited to go in his place. No business of the company was discussed between Hennessey and Evans either at the bus station or while the latter was waiting for the former to finish his work at the office.
The place where these three men were to take their seafood lunch together out at Pontchatrain Beach is some six or seven miles from the office of the company and is in an opposite direction from the office to that of the hotel at which Evans was to stay that night and at which he presumably was to make out his report for the day. It is shown that at other times when Evans and Hennessey were together in a social capacity away from the office, they frequently talked over matters pertaining to the business of their employer.
The three parties left the office of the company around seven o'clock in the car driven by Evans. On their way out, they stopped on Broad Street where Evans and Caldwell got a drink. All three sat in the front seat of the car, with Evans driving, and they proceeded out Gentilly Road at a rapid rate of speed. On reaching the Danziger Bridge, they found the drawbridge being opened, but Evans apparently thought that he could make it across before the bridge was raised, and he pulled his car to the left to pass other cars parked ahead of him and proceeded across the bridge. His car ran up the elevated drawbridge and plunged into the canal where Evans and Caldwell were killed.
The theory under which learned counsel for plaintiff attempts to show that Evans was killed in the course of his employment and while engaged in furtherance of that employment is that he had not finished his day's work as he had to make out his report for the day; that at the time of his death, he was driving a car furnished by his employer and at his employer's expense; that he was in company with his superiors and was subject to be called at any time of the day or night to look after business for his employer.
In order for an employee (or his dependents) to recover compensation it must be shown that the injury occurred in the course of his employment — that is to say within the hours of his work or the period of his employment; and, also, the accident must arise out of the employment or be incidental thereto, that is to say the employee at the time must be engaged about his employer's business and in furtherance thereof and not merely pursuing his own pleasure, coupled with the further consideration that his employment reasonably required him to be at the place where he was injured. Como v. Union Sulphur Co., La.App., 182 So. 155; Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19.
Applying the above guide to the facts in this case and giving the compensation law its usual liberal construction, we fail to see how the plaintiff has brought her claim within the terms of the law. Conceding that the deceased employee was subject to call at any time and that he was on duty at all hours while on his job away from home (and we doubt if the situation justifies such an assumption), still it is clear to us that he was not engaged about his employer's business or doing something incidental thereto and in furtherance thereof at the time of his death, so that it could be said that his injury and death arose out of his employment. In going with Hennessey and Caldwell to get a special seafood supper on the lakefront, he was on a mission for his own pleasure, and his companions at the time were on the same mission and were his social equals, and not his business superiors. The danger to which Evans subjected himself in driving across this bridge at an excessive speed was not a danger that was incidental to or connected with his employment. He would have been subjected to the same danger had he not been in the employ of the Teche Lines, but had been on a mission with these two friends solely for the purpose of getting *Page 409 
a seafood supper for their joint pleasure.
Surely, it cannot be said that the deceased was at a place when killed where he reasonably might be expected to be in furtherance of his employer's business. It would require considerable stretching of the rule to hold that the deceased might reasonably be expected in performing the duties of his employment to be found driving six or seven miles for his supper in company with two friends directly away from the office of his employer where his reports were discussed and away from the hotel where he might have made out a daily report that night. If he had been on his way to his hotel or if he had been on his way to supper at a nearby restaurant, with the intention of returning to the office for the discussion of matters pertaining to his employer's business or with the intention of going to his hotel to make out his daily report, there would be considerable merit in the contention of plaintiff.
A rather similar situation was presented in the case of Milner v. Louisiana Highway Commission et al., 17 La.App. 28, 134 So. 441, 442, where an inspector for the Highway Commission was drowned while crossing the Mississippi River at Natchez on his way home to see his family, with the permission of his employer and driving a car belonging to the Commission and all expenses paid by it. We said in that case:
"He was at the time driving the automobile furnished him by the Louisiana highway commission for the purpose of going from point to point in doing the inspection work which he was employed to do. But in using it to go home, his use was that of a licensee. He had no right to go home for the week-end, except by the leave of the Louisiana highway commission. In going home, he was traveling on the time of the commission, with the commission's consent previously obtained. In using the automobile for the purpose of going to Monroe, however, it was not being used for the purpose of making an inspection. In going home for the week-end, the trip was not for the performance of any service arising out of and incidental to his inspection work, but in order to visit his family — his private affair. The fact that he was being paid by the month, and that while making the trip and spending the week-end, his wage was going on, did not make the trip the performance of service arising out of and incidental to his employment.
"His death occurred in the course of his employment, but it was during a trip undertaken for the gratification of his own personal desire, and not in the performance of service arising out of and incidental to his employment."
We have been cited to many cases from other jurisdictions pro and con on this question, but we do not deem it necessary to discuss them as there are differences in the factual situation of those cases and the present case. In our opinion, of the cases cited, the one presenting a factual situation most nearly similar to those in the present case is that of United States Fidelity 
Guaranty Co. et al. v. Skinner, 188 Ga. 823, 5 S.E.2d 9, where the Supreme Court of Georgia took the same view of the situation as we are taking in this case.
For the foregoing reasons, it is ordered that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered that plaintiff's suit be dismissed at her costs.