BANKS v. TRAVELERS INS. CO. et al.

No. 1446.

District Court, W. D. Louisiana, Shreveport Division.

July 22, 1946.

Booth & Lockard, of Shreveport, La., for plaintiff.

H. B. Barret and Elias Goldstein, both of Shreveport, La., for defendant.

DAWKINS, District Judge.

Plaintiff, on behalf of herself and a minor child, brought this suit in tort against the liability insurers alone of the respective owners of a truck and an automobile, whose collision caused the death of the husband and father. Defendant Travelers Insurance Company (herein called Travelers) called in the owner of the passenger automobile, G. H. Neighbors, the insured of the other defendant, Associated Indemnity Corporation (herein called Associated), as a third party defendant, and prayed judgment against him and Associated for whatever sum might be recovered against Travelers. In the alternative, Travelers asked that its liability be restricted to one-half of the first $10,000 recovered, on the claim of solidary responsibility to that extent with the other insurer, and finally to $10\!/\!35$, or the proportion which its policy ($10,000) bore to the total (Associated's policy was $25,000) of the two policies, $35,000.

Associated and third party defendant pleaded that the deceased, at the time of his injury and death, was an employee of and in the course of his employment with Neighbors, and could assert no claim in tort against these defendants. A demand for summary judgment was made and, after hearing, overruled, with the statement that, if there was a verdict adverse to the contention of defendant, Associated, the Court might reconsider the matter on motion for a new trial, or for judgment notwithstanding the verdict.

A verdict was returned for the sum of $25,000, with the right to plaintiff to execute against either defendant to the extent of their policies, and "as between the insurance companies, the Travelers Insurance Company shall pay $10,000, and the Associated Indemnity Company shall pay $15,-

000." The division of liability in this form was pursuant to instructions of the Court.

Counsel for Travelers has moved that the verdict and judgment to be rendered thereon be recast and modified as to these provisions which follow the first sentence in which the total sum of all damages was fixed by the jury "so that the total sum of $25,000 * * * is apportioned * * * against the Travelers Insurance Company and the Associated Indemnity Corporation, in solido for the sum of $10,000, and against the Associated Indemnity Corporation for the further sum of $15,000 * * *" and if the Court does not set aside the attempted apportionment as void, then it be revised so as to require payment in the ratio of $10\!/\!35$ of the $25,000 by Travelers and $25\!/\!35$ by Associated. In other words, Travelers insists that of the $25,000, it shall pay only $5,000 on the theory that the liability is solidary for $10,000, which must be shared equally, with Associated paying the remaining $15,000, and the alternative, that it pay $10\!/\!35$ of $25,000 or $7,142.83.

Counsel for Associated has also moved for judgment in its favor, notwithstanding the verdict, on the ground the evidence shows, without material contradiction, that deceased, at the time of the accident, was an employee of Neighbors and in the course of his employment, and his widow and child are restricted to the benefits of the State Workmen's Compensation Law. Act No. 20 of 1914.

Counsel for Travelers, both orally and in brief, has presented extensive argument and authorities in support of his contention as to the apportionment of the judgment, but none of the cases involves a factual situation like the present one. In those there were either conventional undertakings carrying solidary liability to a common obligee, or the insurer and insured were held to that type of responsibility. In this case there was no contractual relation between plaintiff's husband and either of the defendant insurance companies. Her right to pursue them is the creature of a procedural statute, but for which she would first have had to obtain judgment against the insured as tort-feasors before pursuing the insurers. It follows therefore that the controlling principle is the legal rights and liabilities as between the principals or insured, tort-feasors, limited, of course, in so far as execution of any judgment in favor of plaintiff may be concerned in this case, to the maximum amounts of the policies. Beyond the policies, while each insured is liable in solido for the full amount of the judgment (or would be if they were present in the case) yet as between themselves, contribution takes place in the case of mutual negligence, to the extent of one-half for each offender. Since neither tort-feasor was sued their sureties step into their shoes and must respond, again within the limits of their policies, in the same manner and to the same extent as their principals, that is, since the total judgment is $25,000 the portion of each insured would be $12,-500, and their insurers, if their policies were equal to or exceeded the last-mentioned sum, would each have to contribute that amount in satisfaction of the judgment. However, since Travelers' policy is limited to $10,000 it can not be compelled to pay more than that sum and the balance of $15,000 will have to be satisfied by the Associated, whose policy was $25,000. The liability of the insurers to the plaintiff is, of course, in solido, just as would be that of the insured, but this arises, not from any promise or legal obligation to the plaintiff, but because of their undertaking to satisfy the liabilities of their insureds. A conclusive demonstration of the correctness of this view is that, if Associated were compelled to pay the whole $25,000, it could in turn, if timely asserted, compel Travelers' insured, the Lynn Company, to stand one-half, or $12,500, which Travelers would have to protect to the extent of $10,000. The motion of Travelers will therefore have to be denied.

Coming now to the motion by defendant, Associated, for judgment in its favor, notwithstanding the verdict, we have these undisputed facts:

Deceased, along with others, was employed on a daily wage basis by Neighbors, the insured of this defendant, to construct in Mississippi a derrick to be used in drilling an oil well. His home and those of the others were in Caddo Parish, Louisiana, which was also the home and domicile of their employer. The employment required

that Banks and his coworkers be transported more than 200 miles to the place where he was to work and when finished that he be brought back to his home, with credit on his wages while making said trips of one full day's pay. He and his fellow workers, about the middle of December, were transported in a passenger automobile of the employer, driven by his foreman, to the place of employment, where work was continued thereon for several days. Freezing weather set in, causing the employees to remain idle a good part of the time. They were paid only for the days any portion of which was spent on the job; otherwise they were on their own expenses without compensation, some 200 miles away from home. Finally, on the 28th of December, it was agreed that they should return to their homes in Caddo Parish until the weather cleared, as it was conceded they could not work on a derrick covered with ice. Neighbors instructed the same foreman to, in the same car, take them first to his office in Bossier City to receive their wages less advances on the job, for the work that they had done, and thence to their homes.

In the course of the journey from Mississippi to Caddo Parish, at a point between the Mississippi River and Monroe, Louisiana, the passenger car, driven by Neighbors' foreman, ran into the rear end of a truck belonging to Travelers, insured, which was parked partially on the north side of the highway without lights or other warning signals and facing west, the same direction in which the car was moving. It had been raining and at the time of the collision there is dispute as to whether the downfall was heavy or light. Banks was injured and died shortly afterwards.

There is some difference in the testimony as to who first suggested the trip back to Caddo Parish pending the clearing of the weather and likewise some difference as to why it was made, that is, as to whether the employees wanted to go home because they had been away during the Christmas holidays and were paying substantial amounts for expenses while receiving no wages; or whether it was for the interest of the employer, who had attempted work on the derrick more than once but had quit because of the weather, yet had to pay the day's wages of his employees if any part thereof was worked.

There is no dispute that as part of their employment all the employees were to be furnished transportation to Mississippi and their return home after the work was finished. The contention is over the matter of whether this particular trip, which was made because of the bad weather, fell within that agreement creating the relation of employer and employee and putting the deceased in the course of his employment at the time of his injury and subsequent death, so as to entitle his dependents to recover under the compensation laws.

Counsel, among others, have cited the following cases in the State courts, to-wit: Crandell v. Philpot Construction Co., La. App., 142 So. 313, by the Court of Appeals for the Second Circuit; Milner v. Louisiana Highway Comm., 17 La.App. 28, 134 So. 441, by the Court of Appeals for the First Circuit; Boutte v. R. L. Roland & Son, 15 La.App. 530, 132 So. 398, Second Circuit; Thompson v. Glen Hill Gravel Co., 19 La.App. 854, 141 So. 797, Second Circuit; Bacle v. Cochran & Franklin Co., La.App., 196 So. 401, Second Circuit; Maddry v. Moore Bros. Lumber Co., La. App., 197 So. 653, Second Curcuit; Walker v. Lykes Bros.-Ripley S. S. Co., La.App., 166 So. 624, Court of Appeals for the Parish of Orleans; Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767, by the Louisiana Supreme Court; Evans v. Central Surety & Ins. Corp., La.App., 10 So.2d 406; McKay v. Crowell & Spencer Lumber Co., La.App., 189 So. 508, First Circuit.

Taking these cases up in the above order, that of Crandell v. Philpot Construction Co. was one in which the plaintiff was an employee of Philpot Construction Company. He had worked two days prior to the accident for day wages, on a road repair construction job. He lived in Alexandria and not knowing whether or not he would obtain work when going from that city to his place of employment, did not carry extra clothing. The company paid its employees by check twice a month for work done up to Thursday night before the Saturday which was pay day, thus holding

back two days against each laborer. Plaintiff had worked only two days and therefore got paid nothing on the Saturday following, but was advanced the sum of $3 to pay on his rent, which was past due; and having let it be known that he wished to go into Alexandria, some 20 miles distant from the work, for the purpose of getting clothing and paying his rent, defendant's foreman told him that some of the other employees were going in on one of defendant's trucks, and that if he wished to go with them, the truck would remain in Alexandria until 12 o'clock that night, at which time it would pick all of them up at Bessie's Cafe on Lee Street, and bring them back to camp. The truck left camp about 9 o'clock at night, driven by another employee of defendant, and after traveling about two miles, ran into some horses on the highway and was wrecked, causing injuries to plaintiff, which required the amputation of one of his arms. The Court found that it was against the rules of the employer that trucks should be used for such purposes, but, when informed of this particular trip, the owner of the business, Philpot, allowed it to be so used because it had been promised by the foreman for that one occasion. Most of the employees had worked for some three months. "It is certain that defendant had never during that time sent the employees in on a truck or in any other conveyances. It is also certain that the contract of employment with plaintiff, or the other employees, did not call for him or them to be sent to Alexandria to get his or their checks cashed, and it was not contemplated in the contract of employment." [142 So. 315.] (Language of the Court.) The following is quoted from the decision which denied compensation under the Workmen's Compensation law of Louisiana (142 So. at page 316): "The fact that plaintiff was being conveyed in his master's truck, at his own request, is not sufficient to bring him under the provisions of the Workmen's Compensation Act (Act No. 20 of 1914 as amended) of this state. His work for the day had ceased some two and one-half hours before. He had left the premises of his master, on his way to perform private duties of his own, in no way connected with his master's business, and not for the purpose of furthering his master's business in any way. He was no longer performing any service for his master. He was not performing any duty which he was employed to perform."

In the case of Milner v. Highway Commission Milner was a timber inspector for the state agency, whose work had taken him to Jackson, Mississippi. He obtained permission from his employer, the Highway Commission, to go to his home in Monroe, Louisiana, after finishing work in Mississippi, for the weekend to visit his family. He was paid a monthly salary and furnished an automobile for use in performing his duties, which he was also permitted to use for trips home. On this last journey the brakes failed to hold and he and the car were precipitated from the ferry at Natchez into the Mississippi River and drowned. In denying recovery to his widow and minor child under the Workmen's Compensation Law against the Highway Commission's insurer, it was said (134 So. at page 442):

"In going home, he was traveling on the time of the commission, with the commission's consent previously obtained. In using the automobile for the purpose of going to Monroe, however, it was not being used for the purpose of making an inspection. In going home for the week-end, the trip was not for the performance of any service arising out of and incidental to his inspection work, but in order to visit his family—his private affair. The fact that he was being paid by the month, and that while making the trip and spending the week-end, his wage was going on, did not make the trip the performance of service arising out of and incidental to his employment.

"His death occurred in the course of his employment, but it was during a trip undertaken for the gratification of his own personal desire, and not in the performance of service arising out of and incidental to his employment."

In the Boutte case plaintiff had been working on a job at Reserve, Louisiana, under one Taylor as foreman of bricklayers on a job with which the defendant,

Roland and Sons, had no connection. Both he and Taylor lived in New Iberia. On leaving Reserve they returned to their homes in Taylor's car. At the time Taylor was also foreman of bricklayers for Roland and Son at Lawtell, Louisiana, some 50 miles from New Iberia and was authorized to employ bricklayers. He engaged plaintiff for work as such on this latter job, and at the time of the accident was traveling from New Iberia to Lawtell in Taylor's car, at the latter's invitation. In denying recovery it was said (132 So. at page 400): "The testimony shows that Roland & Son had not authorized Taylor to make any contract of employment wherein he was required to transport the employees to and from their work and they had no knowledge that plaintiff had been employed at all by Taylor. Plaintiff was not on the pay roll of Roland & Son and had never at any time been on their pay roll. The car in which Taylor and plaintiff were riding was not the property of defendants Roland & Son, but belonged to Taylor, and he and plaintiff are shown to have been the best of friends, and, when he picked plaintiff up to carry him to Lawtell, it was purely a matter of accommodation between friends, and therefore the accident which caused the injury to plaintiff did not arise out of or in the course of plaintiff's employment, nor was it incident thereto."

In Thompson v. Glen Hill, Thompson agreed, for the sum of $10, to transport in his own truck a piece of machinery belonging to defendant from Webb, La., to Rhinehart, La., some 85 miles, the work of loading and unloading to be performed entirely by employees of defendant under the control and direction of its superintendent, who also was to have control of the movement and direction of the truck between the two points. Thompson started to the place where the machinery was to be loaded and some 14 miles before reaching it, his truck, driven by himself, turned over and inflicted injuries from which he died. The suit was by the widow and minor child under the state compensation law. Defendant pleaded (1) that Taylor was an independent contractor and (2) that he was not in the course of his employment when injured. The Court found it un-

necessary to consider the first defense for it decided the second in defendant's favor and in doing so, said (141 So. at page 799): "If deceased had successfully made the trip to Webb and had hauled the machinery to Rhinehart and it had been unloaded, his work would have been finished. The money for his service would have been due. Whether he returned with his truck to his home or went elsewhere would have been of no concern to defendant. It cannot be successfully contended that, if the accident happened on his way returning home after the completion of his work, compensation would be due. The rule of law applies alike to going to work and returning from work. Deceased was driving his own truck on a mission of his own— going to a job he had been employed to perform. The manner of getting himself and his truck there was entirely with him and not the defendant."

Plaintiff, in Bacle v. Cochran & Franklin Co., was employed to repair a tenant house on defendant's plantation, and was injured while traveling in a Ford truck driven by himself, which collided with another vehicle. Defendant denied that it had agreed to furnish transportation to and from the work and averred that the work plaintiff was engaged to perform "was not a part of (defendant's) regular trade (farming), business or occupation", and was therefore not compensable. His demand was rejected by the trial court and in affirming it the Court of Appeals for the Second Circuit, having jurisdiction to review and find the facts, held that the evidence showed that defendant had not agreed to furnish transportation. One Johnson was the manager of the plantation and owned the truck plaintiff was driving when injured but it was used on and about the farm. It was loaned to plaintiff by Johnson for use when going to and returning from the work and he was permitted to buy gas and oil at a station operated by Johnson's son on credit as against his compensation for the repair work. The following is quoted from the decision (196 So. at page 402):

"In keeping with the defensible policy of liberal construction of the Employers' Liability Act, Act No. 20 of 1914, as re-

gards the injured employee or his dependents, in case of death, the courts of this state have uniformly held that where, as a concomitant of the contract of hiring, the employer obligates himself to transport the employee to and from the scene of his work, and he is injured or killed on either trip, the case comes within the purview of the Act, because, it is held, the services of the laborer begin when he boards the means of conveyance to his work and end when he alights therefrom on the return trip. Mahaffey v. Mill Creek Lumber Co. et al., La.App., 147 So. 834; Keyhea v. Woodward-Walker Lumber Co., Inc., La. App., 147 So. 830; Williams et al. v. O. K. Construction Co., La.App., 151 So. 784; Fowler et al. v. Louisiana Highway Commission, La.App., 160 So. 813; Prevost v. Gheens Realty Co., 151 La. 508, 92 So. 38.

"But as the cited cases establish an exception to the rule that for injuries to be compensable, the workman, when injured, must have been on or about the premises of his employer or on a mission for him, within the scope of his employment, strict proof should be submitted to warrant holding that a given case falls within the exception. If such proof is not presented, of necessity, it must be held that when injured the workman was not 'performing services arising out of and incidental to his employment in the course of his employer's trade, business or occupation.' In the present case defendant has clearly established that plaintiff's case does not fall within the rule expressed in the cited cases * * *."

In Maddy v. Moore Bros. Lumber Co., plaintiff, although alleging employment, drew his petition in the form of a tort action. In response to an exception of no cause of action, he filed an amendment, alleging, in the alternative, that he came under the Workmen's Compensation Law. Defendants, being non-residents, and the suit having been served under Act No. 86 of 1928, as amended by Act No. 184 of 1932, providing for process against non-resident owners of automobiles causing injury in this state, defendants excepted to the jurisdiction with respect to this amendment. Both the exception of no cause of action and the plea to the jurisdiction were sustained by the trial court. The opinion on appeal states that plaintiff had contended "from the beginning" that his cause of action was in tort under Article 2315 of the Louisiana Civil Code; and the Workmen's Compensation Law had no application, but the Court added, "However, the prayer for alternative relief is not abandoned." [197 So. 655.] On the other hand, appellees insisted that the complaint stated "a perfect cause of action under the Workmen's Compensation Law", but that they could be sued thereon only at their own domicile in Texas. The ruling on the exception of no cause of action was sustained for the reason that although plaintiff had alleged his employment by the agent of the defendant and the starting of the journey to the place of work, he also charged that the agent operated the vehicle in such a careless and negligent manner that he, plaintiff, was compelled to protest and finally attempted to leave the truck for his own protection but that the agent, with the use of a pistol, compelled him to stay in it until the accident and injury. The Court had this to say (197 So. at page 656):

"It is now well established as a legal principle of the Workmen's Compensation Law, that if, as a concomitant of the contract of employment, the employer obligates himself to transport the employee to and from the situs of the work assigned to him, and the employee is injured while being so transported, the injuries are compensable. This is true because, as has often been held, the day's work begins when the workman boards the means of transportation to his work, and ends when he alights from it on the return trip. Mahaffey v. Mill Creek Lumber Co., La.App., 147 So. 834; Williams v. O. K. Construction Co., La.App., 151 So. 784.

"Therefore, in the present case, if, as alleged, the agent who induced plaintiff to consent to enter defendant's employ was also authorized, as a condition to such employment, to conduct plaintiff to the scene of his work, the employment began the moment the car started on its journey, with plaintiff aboard. The question then arises: Did the relationship of employer and employee cease before plaintiff was injured?

The allegations of the petition are not conclusive on the question.

"It is true that plaintiff alleges that he protested to the operator and remonstrated with him on account of the car's excessive speed and the reckless manner of operation, and endeavored to leave the car when it momentarily stopped; but it is not alleged and is not now contended that he then and there informed the operator that he had decided not to go any further with the engagement to work for defendant; that he had abandoned his purpose to do so. So far as the petition discloses, plaintiff might have had in mind the intention to proceed to the situs of the work by other means of transportation or afoot, if allowed to leave the car, and that such intention was frustrated by his being held in the car until the accident.

"It is but a legal conclusion on the part of counsel when they say that the contract of employment terminated, was abrogated, by the wrongful conduct of defendant's agent, coupled with plaintiff's alleged attitude toward it. A trial on the merits will develop the facts pertinent to this question, and from these facts it can be determined which of the contentions is the correct one."

■ The Court held as a matter of first impression that the statute under which service was made had the effect of bringing defendant into court for a determination of plaintiff's rights as an employee as well as in tort on a claim growing out of the operation of the motor vehicle on the highways of the state. On granting a rehearing the Court of Appeals certified the matter to the Supreme Court of the State, as may be done under state procedure, and that Court sustained the views previously expressed by the Court of Appeals that there was jurisdiction to try the workman's compensation claim and said: "In answer to the question propounded, our instruction is that a nonresident defendant can be subjected to the jurisdiction of the courts of this State through the substituted service of process provided for in Act 86 of 1928, as amended by Act 184 of 1932, in an action instituted by a nonresident employee for compensation under the Employers' Liability Act, growing out of an accident or collision in which the agent of the non-resident was involved while operating a motor vehicle on the highways of this State. Under the facts stated in the request for instructions the lower court was vested with jurisdiction to entertain the alternative demand."

The Court of Appeals reinstated its former decree sustaining the exception of no cause of action, overruled the plea to the jurisdiction and remanded the case for trial on the merits under the Workmen's Compensation Law.

Walker v. Lykes Bros. Ripley S. S. Co. involved a longshoreman, who was injured on the way home after completing his work on defendant's docks on the Mississippi River in the city of New Orleans. He had left the premises of his employment and was walking along a passageway on the premises of another company, some 1000 feet from that of his employment, over a route chosen by himself. He admitted hailing a passing truck of a third person, going in his direction, for the purpose of a ride, and in doing so, ran into the passageway and was struck by a vehicle moving in the opposite direction, resulting in his injuries. In disposing of the matter the Court of Appeals for the Parish of Orleans took cognizance of the general rule that injuries received by "an employee in going to and returning from his employer's premises, where the work of his employment is carried on, does not arise out of his employment so as to entitle him to compensation" [166 So. 625], citing authorities, but it pointed out that there are two well-considered exceptions, the first being that "when the employer furnished transportation to the employee to take him to work or to return him from work as an incident to the employment. In such cases it is held that an accident occurring to the employee while riding in the vehicle of the employer is compensable, as the transportation provided by the employer is impliedly a part of the employment contract," citing Thompson v. Bradford Motor Freight Lines, La.App., 148 So. 79; Keyhea v. Woodard-Walker Lbr. Co., La.App., 147 So. 830; and Baker v. Texas Pipe Line Co., 5 La.App. 25. The second exception

to the general rule was stated to be where the injury was received at a place so closely connected with the employment and in such circumstances as to constitute a hazard of the employment, and decisions of the Supreme Court of the United States were cited in support thereof. There was, of course, no transportation involved in this case and the question to be determined was whether the second exception applied, which it was held did not under the facts of that case.

Nesmith v. Reich Bros. turned on the question of whether plaintiff was an employee or an independent contractor and likewise did not involve transportation. Plaintiff was held to be injured in the course of his employment where, under a contract with defendant for hauling rock, at so much per yard, he was one of the drivers of his own truck and at the time of his injury was standing on the highway awaiting its arrival to take over from the other driver. It was held, notwithstanding the fact that the work was being done on a yardage basis, in his own truck, that he was an employee of defendant and because he was standing on the highway awaiting the arrival of the other driver of his truck, whom he was to relieve, he was in the course of his employment.

In the present case, let it be conceded that in its inception, the contract of employment contemplated one round trip to Mississippi; the first half to the place of work and the second to return the employees to their homes after it was finished. If it had happened that the party for whom the derrick was being built had decided to discontinue it and abandoned the purpose to drill a well, or high water had covered the land for weeks or months, would it have been any less the obligation of the employer to return the deceased and the others to their homes? It would seem not. Looking at the matter from a practical standpoint, it may be assumed, I think, that reasonably continuous employment until the completion of the work was intended. If, because of unusually bad weather, conditions had continued for a month or more, which made it impossible to perform any work, and both the employer and employees were held in an inactive status, with expenses of each assuming proportions never contemplated, could it be said that the agreement by the employer to transport the employees to and from the place of work created no obligation to return them home in the face of conditions thus unexpectedly occurring, for which neither held any responsibility? Again, it would seem that the employer, both as a matter of his own financial interest, and under an implied duty which the fortuitous circumstances had created, would have been bound to send the employees back to their homes, until the agreement could be performed according to the intention of the parties. Here, it is not disputed that attempts had been made to carry out the undertaking between employer and employees, as originally contemplated, but the intervention of weather in which work could not be performed made it impossible, to the point that it was mutually agreed it should be discontinued until the weather cleared and further that the employer would, in the meantime, return the employees to their homes until conditions improved so that the contract could be completed. Therefore, even if the course actually pursued were not thought of at the time of employment, when confronted with the conditions which the proof establishes without contradiction, there would seem to be no reason why, in view of the emergency, the parties to the agreement could not amend it by agreeing that the employees should be carried back to their homes with the understanding that they be returned to the job to finish it when the weather cleared. Such an arrangement was to the mutual interest of both sides, and had but one purpose, the final completion of the derrick. It could hardly be denied that this was the understanding when the journey from Mississippi to Caddo Parish was started. If so, Banks was as much in the course of his employment when injured as he was in making the trip in the first instance.

Analyzing the contract of employment a little further, it is thought that the following is also worthy of consideration in interpreting the obligation of the employer to these men, in the conditions which con-

fronted them. It is undoubtedly clear that they were to receive their promised wages free of any costs of transportation to and from the work, which, as previously stated, was more than 200 miles distant from their homes. The job involved the erection of a single derrick. It was understood, of course, that they were to pay for their own food and lodging while on the job, with such incidental interruptions as might be normally expected. In this instance, however, an extended freezing spell intervened, which made it probable, in the judgment of both employer and employees, that a period of idleness would ensue, during which much of their otherwise substantial wages of $18 and $20 a day would be consumed, without their being able to earn anything. Is it reasonable to say that in this situation they were without right to ask that the employer take them home and bring them back as a consequence to be implied from the nature of the agreement, or were they left entirely to their own means of extricating themselves from the choice of remaining and consuming their earnings, or expending a substantial part thereof in the cost of transportation to their homes and in returning whenever conditions permitted resumption of work? The evidence also shows, without dispute, that it was common practice, at least during the war period, which involved gasoline rationing and tire shortages, for the employer to furnish his employees on gas and oil well derricks and rigs transportation between the place of work and their homes.

In Landry v. Louisiana Highway Commission, La.App., 153 So. 74, 76, plaintiff was employed as a grader on a highway, under an arrangement by which he was transported several miles from the barn of the defendant on road machinery, which graded one side of the road on its way out and the other on returning. Another crew, under a different foreman, performed similar work on a road which intersected the one in which Landry was working. The machinery used on this latter road broke down and the foreman thereon with the approval of the engineer or superintendent in charge of both crews, arranged with plaintiff's foreman late in the after-noon and just before going back to the barn, to do certain work on the connecting road the next day. It was decided to leave the machinery used by plaintiff's crew at this connecting road to have it more readily available the next morning. Accordingly, plaintiff's foreman decided to make other arrangements to carry his employees back to the barn. They started walking to a previously determined point, a considerable distance away, where it was thought a car could be obtained. Another automobile came along, and since the driver was known to the foreman, the latter induced the former to permit his men to ride to the place where the car was to be provided. There were so many men it was necessary that some, including the foreman and the plaintiff, had to stand on the running board and hang on to the side of the car. When they came to the place where the other car was to be made available, it developed that this could not be done, and by agreement with the driver of the vehicle on which all were riding, it was decided to continue further until the anticipated transportation could be found. Shortly thereafter, in negotiating a curve plaintiff was thrown from his perch on the running board to the ground and injured. In reaching the conclusion that Landry, plaintiff, was in the course of his employment, the Court of Appeals for the First Circuit, through Judge LeBlanc, after stating the facts substantially as above, said: "We had occasion very recently to decide a case in which this same question was involved and therein referred to the extension of the rule with regard to an employee having been injured on his return from work while on a conveyance furnished by the employer, to those cases where the contract to furnish transportation may be implied as well as express. Walker v. Mills Engineering Construction Co. et al., La.App., 152 So. 83. We cited the same authority to that effect as is cited in this case by the district judge in his written reasons for judgment. In this case, however, the facts favor the plaintiff more than they did in the cited cases as the accident happened about three o'clock in the afternoon, an hour or more before the employee's day's work had ended. In

a sense it may be said that the accident did not happen when he was being transported home from work because there is considerable testimony to the effect that plaintiff might have had some work to do around the barn before 'knocking-off' time. We think that it would be unreasonable to restrict the employee in this case to the rigid rule of transportation contended for by counsel for defendant, for, as we have already stated, *an emergency might easily arise which would necessarily cause a deviation from that rule*. We believe that in this case, the foreman Louviere exercised good judgment in following the plan he did, of leaving the equipment properly stored in a yard along the highway, from where it would be put to use in starting the next day's work. It was a plan calculated in his opinion, no doubt, to best serve the interest of his employer. But, conceding that it was not, again the thought comes to us, how can the rights of the plaintiff herein who was only a laborer working under him be affected? It was a matter of no concern to him if his foreman did not adhere to the strict rules or instructions in seeing that he got back from work. He was not expected to walk back five or six miles, on a bitterly cold day as the day he was injured on was shown to have been. He depended on his foreman, as he had the right to do, to see that he was transported to the barn. The manner selected by the foreman was one of those he says he thought he had the right to select. It was a reasonable plan, and in the accident which occurred while so being transported, Landry may very well be said to have been injured in the scope and course of his employment within the terms and meaning of the compensation statute (Act No. 20 of 1914, as amended)." See also Walker v. Mill Construction Co., La. App., 152 So. 83, Second Circuit, and the well considered case of Baker v. Colbert, 17 La.App. 518, 136 So. 210, in which many cases are reviewed; Osborne v. McWilliams Dredging Co., 189 La. 670, 180 So. 481; Rogers v. Mengel Co., 189 La. 723, 180 So. 499.

With respect to the plea of estoppel, based on the contention that, originally, Neighbors and his insurer denied compensation to Banks, there was, of course, inconsistency with their present defense; but estoppel does not arise unless one party has caused the other to change his position to his serious injury, relying on representations so made. Here, the employer simply failed to pay what was due, and the employee's beneficiaries instead of suing under the Workmen's Compensation Law, brought this action in tort against both the insurers of the truck and of the former employer's car, each of which was involved in the accident. Such a choice could not change the relationship of employer and employee, if it existed, which must be determined by the circumstances and conditions at the time of the accident. See State ex rel. Porterie et al. v. Gulf, Mobile & Northern R. Co., 191 La. 163, 184 So. 711.

The motion for judgment notwithstanding the verdict by Associated Indemnity Corporation is sustained.

Proper decree should be presented.