ELLIS, Judge.
The plaintiff, Mrs. Eula M. Jinks, has filed this suit in which she is seeking to recover under the Compensation Act, Act No. 20 of 1914, as amended, from her deceased former husband’s employer, Burtin Sutton Oil Co. Inc. the sum of $6,000.00 at the rate of 65% of his wages from March 1st, 1948 to August 22nd, 1948, not to exceed $20.00 per week, and 46}4% of his wages from August 22nd, 1948, the date of her second marriage, to the expiration of 300 weeks.
The defendant admitted employment and the rate of pay and all material allegations of plaintiff’s petition, including the employee’s accidental death on March 1st, 1948, but contended that plaintiff’s deceased husband, Mayo Raggio, had, at the time of his death, completed his work for the day and was returning to his home and was not at that particular time performing any duties incidental to or growing out of the employment by the defendant.
The trial in the district court resulted in a judgment in favor of the defendant dismissing plaintiff’s suit, as the court concluded in its written reasons that the accident to decedent did not occur in the course or scope of his employment.
From such adverse judgment the plaintiff is prosecuting this appeal.
The learned judge of the lower court has correctly stated the facts as shown by the record in this case and the law applicable thereto, and reached the proper judgment, and we, therefore, adopt his written reasons which are as follows:
“The facts are that on March 1, 1948, and for some time prior thereto, Mayo Raggio was employed by defendant as a pumper in connection with the drilling of an oil well in 'Cameron Parish. For that work he was paid by the hour and his wages averaged about $55.00 per week. On March 1, 1948 his working hours were from 7:00 o’clock A.M. to 3:00 o’clock P.M., and the defendant company actually paid him for working those hours. In addition to his regular duties as a pumper, however, Raggio was occasionally directed to take certain reports relating to the drilling operations from the location of the well to one Walter Stanley, who operated a store at Holly Beach, in Cameron Parish.”
“On the above-mentioned date, Raggio informed the production foreman at the well that his nephew, J. B. Arbella, was going to let him off early because he planned to go to Lafayette the following day to have his son’s eyes tested. The production foreman thereupon said to Rag-gio, ‘Well, you help me tie this two-inch pipe line together and you can take out.’ After rendering the assistance requested, Raggio then asked the foreman if he wanted him to deliver the reports, and the production foreman gave the reports to Raggio to be delivered to Stanley at Holly Beach. Raggio left the location of the drilling rig at approximately 2:10 P.M. that afternoon with a large envelope containing the reports, his instructions, actual or implied, being to deliver the reports to Stanley. After the reports were so delivered there was nothing further for him to do for defendant that day and there was no necessity or requirement that he return to the location of the well that afternoon.”
“At that time Raggio lived with his wife and two children in Hackberry which is approximately seventeen miles north of Stanley’s Store in Holly Beach. There is only one highway leading from Holly Beach to Hackberry ’ and Raggio customarily *345 traveled to and from work over that highway on a motorcycle owned and operated by him. His contract of employmént did not provide for any transportation or allowance for travel expenses between the place of his employment and his home.”
“When Raggio left the place of his employment on March 1, 1948, he rode on •his motorcycle from there to Stanley’s Store in Holly Beach, where he delivered the reports to one Mason Istre, a clerk in the store, who in turn handed them to Mr. Walter Stanley. Raggio then left the Stanley Store on his motorcycle. A few minutes later, Raggio while riding on his motorcycle, overtook and passed a car being driven by one George Sells on the Hackberry-Holly Beach Highway. At that time the motorcycle and the car were eight or ten miles north of Holly Beach and both were being driven in a northerly direction, or toward Raggio’s house. At about 2:45 P.M. that day, or only a few minutes after he passed George Sells, Raggio was found lying in the middle of the Hackberry-Holly Beach Highway unconscious, critically injured and in a dying condition. He died within a few minutes after he was so found.”
“Immediately after Raggio was discovered on the highway his cap, spots of blood, a piece of metal which had been a part of the motorcycle and marks on the highway were found south' of the place where Raggio and the motorcycle were lying, which indicates to the satisfaction of this Court that he was travelling in a northerly direction or toward his home at the time of the accident. The accident occurred at a point approximately eleven or twelve miles north of Stanley’s Store in Holly Beach, and about five or six miles south of Hackberry.”
“Counsel for plaintiff contends that since the accident occurred before 3:00 o’clock P.M. on March 1, 1948, and since he was actually paid for work up to that time, the accident occurred during Raggio’s hours of employment, and in the course and scope of his employment. In support of this contention several cases are cited, the principal cases so relied upon being Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19; Bountiful Brick Company v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507, 66 A.L.R. 1402; Cudahy Packing Company of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Ford v. City of Alexandria et al., La.App., 155 So. 48; Nesmith v. Reich Bros. et al., La.App., 14 So.2d 325; 203 La. 928, 14 So.2d 767; and Pitre v. Louisiana Highway Commission, La.App., 161 So. 894.”
“The Court has carefully considered each of the authorities so cited. The facts of the case how being considered, however, are easily distinguished from the facts which were presented in each of the cases relied upon by plaintiff, and, in the opinion of this Court, those cases are not applicable here.”
“In the present case, the Court concludes that on March 1, 1948, Raggio completed all of the duties which he was required to perform for defendant company at the time he handed the drilling reports to Mason Istre at Stanley’s Store. His conversation with his production foreman, Marvel v. Bolton, shortly before he left the drilling rig, can be interpreted only as meaning that Raggio was to be off work for the rest of the day as soon as he had delivered the reports to Stanley’s Store. His ‘hours of employment’ on that day were completed when the reports were so delivered, and after he left the store, therefore, apparently en route to his home he was not acting within .the course or scope of his employment.”
“In the case of Kern v. Southport Mill, supra, the Court said [174 La. 432, 141 So. 21]:
“ ‘In determining, therefore, whether an accident ‘arose out of’ the employment, it is necessary to consider only this : (1) Was the employee then engaged about his employer’s business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer’s business reasonably require that the employee be at the. place of the accident at the time the accident occurred ?’ ”
“In the present case Raggio certainly was not engaged about his employer’s business *346 at the time of the accident. He had completed his day’s work and was going toward his home. In fact, he had travelled more than two-thirds of the distance between the place where he performed his last duty for defendant and his home. He, therefore, was pursuing his own business or pleasure at the time of the accident. Neither can it be said that the necessities of his employee’s (employer’s) business reasonably required that Raggio be at the place of the accident at the time the accident occurred. As far as the employer was concerned, Raggio was free to go wherever he liked after the drilling reports were delivered. He could have remained at Holly Beach or he could have driven in the opposite direction from Hackiberry as far as the necessities of defendant’s business was concerned. There is nothing in the record to indicate that the necessities of defendant’s business reasonably required that Raggio be approximately eleven or twelve miles north of Stanley’s Store at the time of the accident.”
“In reaching this conclusion the Court has considered the fact that Raggio was paid for working until 3:00 o’clock P.M. on March 1, 1948, when in fact the accident occurred approximately fifteen minutes before that time. But the mere fact that defendant paid him for working until that hour does not mean that regardless of what he did he must be considered as acting in the course or scope of his employment until 3:00 o’clock that afternoon. Raggio completed all of his duties for that day at the time he delivered the reports to Stanley’s Store, and after that time he became engaged on a personal mission of his own choosing and was no longer acting in the course or scope of his employment, regardless of the time for which he was paid by defendant. Milner v. Louisiana Highway Commission, 17 La.App. 28, 134 So. 441; Evans v. Central Surety and Insurance Corp, La.App., 10 So.2d 406; Como v. Union Sulphur Company, La.App., 182 So. 155; Moss v. St. Paul Mercury Indemnity Co., La.App., 33 So.2d 867;
“Counsel for plaintiff further argues that by paying Raggio for working until 3:00 o’clock P.M. on the day of the accident, defendant impliedly agreed to pay for his transportation on the days that he brought the drilling reports to Stanley’s Store. Since Raggio’s travelling expenses were paid on such days, it is argued, the case is governed by the well-established rule that the services of the laborer begin when he boards the means of conveyance to his work and end when he alights therefrom on his return trip. This Court, however, cannot concur with counsel on the theory SO' advanced. The contract of employment entered into between Raggio and defendant did not provide that any of Raggio’s travel-ling expenses were to be paid or reimbursed to him. On the day the accident occurred, the decedent was simply allowed to quit work earlier than usual because of his plans for the following day. There is no evidence in the record which could serve as any reasonable basis for the Court to conclude that on days when Raggio delivered the reports there was an implied agreement to the effect that defendant was to pay him his traveling expenses from his place of employment to his home.”
“While the accident was tragic, the Court must conclude for the reasons herein set out that it did not occur in the course or scope of the decedent’s employment, and plaintiff, therefore, is not entitled to recover from defendant in this action.”
“Judgment will be rendered, therefore, in favor of defendant Burton-Sutton Oil Company, Inc., and against the plaintiff, Mrs. Eula M. Jinks, rejecting paintiff’s demands and dismissing this suit. Defendant is relieved from the payment of any costs in connection herewith, and, the suit having been filed in forma pauperis, plaintiff is condemned to pay only such costs, if any, as may legally be assessed to her.”
It is, therefore, ordered that the judgment of the District Court be affirmed.
J. CLEVELAND FRUGE, Judge, sitting ad hoc.