McCALEB, justice.
The dependent mother of George Barnes, Jr., who met his death in an automobile accident while allegedly performing duties of his employment, brought this suit for workmen’s compensation against his former employer, Wilson Supply Company, and its compensation insurance carrier. The respondents resisted the claim on the ground that the fatal accident had no connection with Barnes’ employment. The district court rejected the demand and, on appeal, the Court of Appeals, Second Circuit affirmed the judgment. See 30 So.2d 346. Certiorari was granted and, during the pendency of the case here, the plaintiff died. Her succession was opened in Florida and Mrs. Eleanor Reese, who had been appointed and qualified as administratrix, obtained an order substituting her as party plaintiff.
Thereafter, on motion of respondents we rescinded the order permitting Mrs. Reese to be substituted as a party plaintiff on the ground that she was without authority to prosecute the action, as administratrix of Mrs. Warren’s estate, under the Florida appointment. However, leave was granted counsel for plaintiff to cause the substitution of a proper party. See Warren v. Globe Indemnity Co., 216 La. 107, 43 So. 2d 234. Subsequently, Rex Morrisett, local administrator of the ancillary estate of Mrs. Warren, was substituted as party plaintiff herein and the case has been submitted for decision under the provisions of Section 8 of Rule IX of this court.
The issue presented is whether the employee, at the time of the accident, was performing services arising out of and in the course of his employment as provided by the Employer’s Liability, Act. Paragraph 2 of Section 1 and Section 2 of Act No. 20 of 1914, as amended, Act No. 85 of 1926. No substantial dispute exists on the facts of the case, as found by the District Court and the Court of Appeal. We restate them as follows:
*147 Wilson Supply Company is a dealer in oil field equipment and maintains a branch office in Magnolia, Arkansas. George Barnes, Jr. was employed as manager of the office and also as a travelling salesman at a salary of $200 per month, plus expenses. He lived at Haynesville, Louisiana, some 20 miles south of Magnolia and was furnished a company car for his use in performing the duties of his employment. On the morning of the fatal accident, Barnes left his home in Haynesville in the company car and drove to Olla, Louisiana, his purpose being to contact a Mr. Crow, a representative of Penrod Drilling Company, to secure Crow’s signature to purchase orders for oil well equipment and supplies. En route, he stopped at Ruston, where he met a young lady, Miss Aldonza Sookul, a student at Louisiana Polytechnic Institute. She was about to leave for a trip to her home at Winnfield and Barnes invited her to ride with him, as he would pass through Winnfield on his way to Olla. After delivering her at her home in Winnfield, Barnes proceeded on to Olla (about 30 miles away) arriving about 10:00 a. m. at the home of a friend, a Mr. Miller, who was also a friend of Crow, and ascertained that Crow was out in the oilfields but was expected to call or come in sometime during the day. With Miller’s assistance, Barnes spent most of the day visiting different places in an unsuccessful search for Crow. At about 5:30 in the afternoon, Barnes informed Miller that “he had to go then”; that he was going to Winnfield to get something to eat. Miller invited-him to stay over and have dinner at his-home but Barnes declined, asking him “to-check on Mr. Crow while he was gone” and that, if he came in, to tell him that he wanted to see him.
Barnes then left Olla, drove to the home of Miss Sookul at Winnfield, and invited her to dinner. She had already dined but told him that she would, nevertheless, accompany him. When they left, she informed her mother that she would not be out late as she had to study that night. They then drove to a cafe about a mile north of Winnfield on the road to Dodson, where Barnes ate a sandwich. Afterwards, they drove north to Dodson, where they called upon a friend of Miss Sookul. The visit there was short (about IS minutes) and, when they left, they drove towards Winnfield. At a point a few miles south of Dodson, Barnes and Miss Sookul were killed when his automobile collided with another object. The accident occurred about 8:30 p. m. but no other details are disclosed by the evidence.
On the foregoing state of facts, both the district judge and the Court of Appeal found that the mission on which Barnes was engaged at the time of the accident was purely personal to him and entirely disconnected from the purpose of the trip for his employer. Conformably, it was resolved that the accident causing his death did not arise out of his employment.
*149 We think that the rulings are correct. In deciding whether an accident arises out of and in the course of an employment, it is of initial importance that examination be made of the employment contract so that the hours of employment and nature of the work contemplated maybe ascertained. In the case at bar, the Court of Appeal found that Barnes’ engagement as travelling salesman rendered him subject to call at all hours and that he vested with a wide discretion in the determination of his hours of work. This type of employment has been indiscriminately referred to by some authorities as being ■“continuous” so that an employee injured at any time of the day or night is said to have been injured in the course of his employment or during working hours. See Horovitz on “Workmen’s Compensation” pages 165-167. and cases there cited and Souza’s Case, 316 Mass. 332, 55 N.E.2d 611.
The validity of these holdings or assumptions is not free from doubt. Merely because a man is subject to call at all times does not necessarily mean that he is in continuous employment — for, obviously, his employer expects that, when the particular mission in which he is engaged is completed, he will take out time for food, rest and purposes of his own. It is probably more accurate to say, in cases of travelling salesmen, that they serve their employer at such times and hours convenient to the customer and that they are, of course, vested with wide latitude and discretion in selecting the hours of work. But duriiig the period the salesman is not working, there is no reason to place him in a preferred class by assuming that his employment is continuous. Thus, Barnes’ mission was to have Mr. Crow sign some orders for supplies. He went to Olla for that purpose and remained on the job looking for Crow until about 5 :30 in the afternoon. At that time, he decided to discontinue his search, visit the young lady in Winnfield and get something to eat. We 'have no doubt that he had the right to do this as his employment contract contemplat- ■ ed that he should have food, recreation and rest and the hours thereof were left in large measure to his discretion. Hence, in this aspect, it would not be unreasonable to say that the accident did not happen in the course of the employment, or during the working hours of his selection.
However, we do not find it necessary to rest our decision on that ground as it is perfectly plain that, in any view of the case, the accident cannot be said to have arisen out of the employment. The Court of Appeal based its opinion on the rule announced in Kern v. Southport Mill Ltd., 174 La. 432, 141 So. 19, 21, wherein it was declared that an accident arises out of an employment when it occurs while the employee is engaged in his employer’s business and “not merely pursuing his own business or pleasure” and at a time when the employer’s business reasonably required *151 that he be at the place where the accident happened. This doctrine, which has been reaffirmed and applied by the Court in Harvey v. Caddo De Soto Cotton Oil Co., 199 La. 720, 6 So.2d 747, 749; Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767 and Laine v. Junca, 207 La. 280, 21 So.2d 150, resulted from a liberal interpretation of the words “arising out of” the employment as used in the compensation act- — for, under the prior decisions of our courts, beginning with Myers v. Louisiana Railway & Navigation Co., 140 La. 937, 74 So. 256, 258, it had been declared that, in order for an accident to arise out of the employment, “it must appear to have its origin in a risk connected with the employment”. Indeed, at the time of decision in the Kern case, the overwhelming majority view throughout this country was that, if the force causing the injury was one to which the general public was subjected, the accident could not be said'to arise out of the employment.[1] But the court in the Kern case, in adopting a more liberal rule under which injured employees are permitted recovery for any accident occurring while they are at work or doing things so closely connected therewith that it is fair to say that it has causal relation to the employment (i. e., using toilet, drinking water, etc.), was careful to point out that, as a condition to recovery, the employee must be engaged about his employer’s business at the time of the accident and not merely pursuing his own purposes. If the court had not placed this limitation on the construction of the words “arising out of”, then any accident occurring during working hours would be compensable, notwithstanding the fact that the employee was not engaged in the performance of his duties.[2]
To hold in the case at bar that the accident is compensable would destroy the rationale of the ruling in the Kern case and render the provision of the compensation law, that the accident arise out of the employment, utterly meaningless. This we cannot do; it is the function of the courts to construe laws, not to re-write them.
Counsel for plaintiff contends that, even if it is held that Barnes’ trip to Winnfield for the purpose of visiting Miss Sookul was a personal mission, it was a temporary deviation or departure and that he had reentered his employment after he headed towards Winnfield following the visit to Miss Sookul’s friend at Dodson.
We see no merit in this proposition because, if it be assumed that the tort doc *153 trine of deviation and reentry[3] is applicable in compensation cases, it is manifest that there was no deviation by Barnes in this case as he was vested with implied authority and discretion to make the trip to Winnfield and Dodson for his own purposes. In other words, when he elected to. discontinue his search for Mr. Crow at 5:30 in the afternoon and take the trip, he was not violating any instructions, express or implied, of his employer. Hence, he did not deviate — he simply" used the car for a personal mission. And, if he did not deviate, he cannot be said to have reentered his employment until the mission was completed.
The judgment of the Court of Appeal is affirmed.
FOURNET, C. J., and MOISE, J., dissent and assign written reasons.
PONDER, J., dissents.

. See Harvey v. Caddo De Soto Cotton Oil Co., supra, for a full discussion.

. Even so, the Court of Appeal for the Parish of Orleans in St. Alexandre v. Texas Co., 28 So.2d 385, 389, viewed the principle of the Kern, Harvey and Ne-smith eases as writing out the words “arising out of” the employment — for it observed that “whenever an accident occurs in the course of employment, no matter what may have been the cause of it, it must be held to have arisen out of the employment.”

. See Cusimano v. A. S. Spiess Sales Co., 153 La. 551, 96 So. 118; Glass v. Wise & McAlpin, 155 La. 477, 99 So, 409; and compare James v. J. S. Williams & Son, 177 La. 1033,150 So. 9.