90 So.2d 465 (1956)
Virginia Jernigan ROBERSON, Plaintiff-Appellant,
v.
MICHIGAN MUTUAL LIABILITY COMPANY, Defendant-Appellee.
No. 8539.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1956.
Rehearing Denied November 29, 1956.
Writ of Certiorari Denied January 21, 1957.
Godfrey & Edwards, Many, for appellant.
T. C. McLure, Jr., Alexandria, for appellee.
AYRES, Judge.
By this action the surviving widow and minor daughter of Leland Roberson seek to recover workmen's compensation of Roberson's employer's compensation insurer for the statutory maximum of $30 per week for a period of 300 weeks on account of the death of Roberson on November 18, 1954, allegedly from accidental injuries received November 13, 1954, while he was discharging the duties of his employment in the course of the business of the Central Louisiana Electric Company.
The defendant interposes two defenses, (1) that at the time of the onset of the conditions causing the death of the deceased, Roberson, he was not on duty or performing any services in connection with his employment, and (2) that deceased died as the result of natural causes and that neither his employment nor his activities *466 therein produced his death or precipitated or aggravated the conditions from which he died. All other issues have been eliminated by stipulation of the parties. The principal issue is, however, one of causal connection between deceased's employment and his death.
From an adverse judgment denying her claim for compensation, plaintiff has appealed.
Roberson had been in the employ of this employer and/or its predecessors for more than 25 years. At the time of his death he was manager of its Many, Louisiana, plant, where it operated an ice plant subsidiarily to its main business of transmission and distribution of electric current.
The evidence discloses that Roberson worked during the morning hours of November 13, 1954; that during the day he and his daughter took a stroll through the nearby woods and that during the afternoon, due to an interruption of service at the ice plant by a minor breakdown, he was called there, where, in assisting an employee in an attempt to correct the difficulty and place the machinery back in operation, he picked up a large wooden door weighing 45 to 50 pounds and dragged it a distance of a few steps. Soon thereafter, he expressed himself as feeling bad and experienced some pain in his chest and shortness of breath. He then returned to his residence to rest. Later, while eating the evening meal, a fire alarm was given, whereupon Roberson started, in company with his wife and daughter in the family car, to report to the scene. They were unable to drive to the burning residence due to an obstruction in the street. Whereupon the car was stopped and they alighted therefrom. Roberson proceeded hurriedly on foot and, after walking some distance, probably 40 to 50 yards, was stricken suddenly with violent excruciating pains in his chest and left shoulder. He was unable to proceed further and was returned to his residence, and within approximately 30 minutes carried to the Fraser Sanitarium in Many, where he was immediately examined and treated by Dr. J. A. Kopfinger, who diagnosed his condition as a recent acute myocardial infarction or a coronary thrombosis, from which he died November 18, 1954.
Plaintiff's claim is predicated on the proposition that her husband's death was caused, precipitated and brought about by the strenuous physical exertion and strain and the mental stress and strain and excitement occasioned by his work at the time of and prior to his seizure with the aforesaid attack.
The first issue logically presented for determination is whether the deceased was engaged in performing services in the course and scope of his employment at the time he was seized with the aforesaid affliction. That he, as manager of the plant, was acting in the course and scope of his employment in the afternoon at the ice plant is a matter about which there could be no serious question. Whether the employee was acting in a similar manner in reporting to the fire later in the afternoon presents a more serious question. The deceased was on duty 24 hours per day, subject to call at any time, night or day. It was of vital importance to his employer, in the event of fire, that some representative of the Company protect the employer's property and interests, such as in saving the meters from destruction by fire and in cutting or severing the electrical wires in a manner to prevent the likelihood of their falling to the ground and coming in contact with persons who may be in the vicinity at the time. Roberson was so very anxious these duties be performed that even after he was stricken, he sent his wife forward to make certain of their performance.
It was contended that it was not his duty but that of the service man in the electrical department to attend to these matters. This employee at the time was E. D. Bostian, who testified that after seeing the fire *467 from his residence, he reported there, cut or severed the electrical wires and removed the meter which was attached to the house on fire. However, he denied that it was his duty or that it was so understood that he was to report to fires. On a prior occasion a transformer caught on fire at night. That matter was reported to Roberson, who, in turn, called and instructed Bostian to report to the scene of the trouble. Bostian did so and, after making an inspection, reported the results to Roberson, who then gave him instructions to delay making the repairs until the following morning. It was Roberson's responsibility as local manager for his employer to see that these duties were performed.
The onset of Roberson's condition, resulting in his death, occurred during the time of his employment at a place where the necessities of his employer's business required that he be at the time. If it can be correctly said that Roberson experienced an accident within the purview and intent of the provisions of the Workmen's Compensation Statute, such accident, therefore, occurred both within the scope of and arose out of his employment. Pertinent here is the expression found in Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19, 21, relative to the statutory requirement that, in order for an employee to be entitled to compensation for accidental injuries, he must have suffered such injuries by "`accident arising out of and in the course of such employment'":
"Now an accident occurs in the course of an employment when it takes place during the time of such employment; just as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time.
"In this case the accident occurred very certainly `during the course' of plaintiff's employment, since he was on his way back to the mill pursuant to express instructions.
"But that alone is not enough for recovery; the statute further requires that the accident must also `arise out of' the employment. By which is meant, that the accident must be the result of some risk to which the employee is subjected in the course of his employment and to which he would not have been subjected had he not been so employed.
"But time, place, and circumstance must determine this. When the illfated Titanic foundered in the spring of 1912, all persons aboard her were situated exactly alike as to time and place; but they were not all situated alike as to circumstance. Those who traveled for pleasure were present of their own free choice alone; those who traveled for business, whether their own or that of another, were there of necessity. And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business called him there, the injuries he may suffer by reason of such accident `arise out of' the necessity which brought him there, and hence `arise out of' his employment, if it so be that he was employed and his employment required him to be at the place of the accident at the time when the accident occurred.
"In determining, therefore, whether an accident `arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be *468 at the place of the accident at the time the accident occurred?
"The question whether or not the employee might have been injured in the same way, and even at the same place and time had he not been called there by the necessities of his employer's business, but had gone there only for his own pleasure or in pursuit of his own business, has nothing whatever to do with the case. It was his employer's business which called him to the place and time of the accident and not his own pleasure or business; and hence his injuries arose out of his pursuit of his employer's business and not out of his pursuit of his own business or pleasure.
"In the final analysis that is the sum and substance of the principle on which all compensation cases rest, notwithstanding the many words in which that principle has been wrapped up."
In this connection this court had the occasion to say in Green v. Heard Motor Co., Inc., La.App., 53 So.2d 700, 701:
"There can be no question with respect to the principles enunciated in the landmark case of Kern v. Southport Mill, Limited, 174 La. 432, 141 So. 19, and the impressive array of subsequent cases which have reiterated the proposition that the accident causing the injury must be the result of a risk to which the employee was subjected in the course of his employment, and to which he would not have been subjected had he not been so employed. We further concede that an additional factor in cases of this kind is the determination of the nature of the work contemplated, as observed in Warren v. Globe Indemnity Co., 217 La. 142, 46 So.2d 66."
See also Dobson v. Standard Accident Insurance Co., 228 La. 837, 84 So.2d 210.
Considering the established facts in the light of the principles enunciated in these cases, no logical conclusion could follow other than that Roberson was performing services arising out of and in the course and scope of his employment when he reported to a fire to ascertain and make certain that his employer's property was being protected and that its electric transmission lines did not become a dangerous instrumentality and hazard to those fighting fire and those who by chance were in the vicinity.
Next for resolution is the question of causal connection between the services performed by Roberson and the coronary thrombosis which caused his death. The facts pertinent to this issue may be briefly summarized. For a number of years Roberson was afflicted with arteriosclerosis or hardening of the arteries. On or about January 1, 1944, Roberson suffered a coronary thrombosis or occlusion because of this arteriosclerosis. Following that attack, Roberson was confined to a hospital and his residence for several months and was on leave from his work approximately a year. He then resumed his employment under the doctor's instructions for him to slow down, to get more rest and relaxation, to engage in no severe or strenuous work or exercise and to do no heavy lifting.
The facts as to the occurrence of November 13, 1954, have already been stated. The medical evidence comes from four experts, two of whom were specialists in the field of internal medicine. Three of the physicians were called by the plaintiff and one by the defendant. Dr. Kopfinger, on Roberson's admission to the sanitarium, obtained a brief history of his condition. In the course of relating that history, Roberson told the physician that he was on his way to a fire and that as he was hurriedly walking in the direction of the fire, he experienced awful, sudden sharp pains in his chest, which, according to the Doctor, resulted from the fact Roberson had performed *469 an exertion out of the ordinary in his particular condition and that Roberson's hurriedly walking to the fire, accompanied by the stress and strain, was the factor which caused, precipitated and brought about the coronary thrombosis.
Dr. Frank Dienst, a specialist in the field of cardiology, expressed an opinion that Roberson's heart attack occurred at the time he hurried to the fire and that the physical stress and strain, as well as other incidental factors connected with the fire episode precipitated the heart attack from which Roberson died. Dr. S. W. Boyce expressed an identical opinion with those of Drs. Kopfinger and Dienst.
All of these experts had the benefit of the hospital records and the cardiograms made and taken at the Fraser Sanitarium during Roberson's hospitalization there. These records were studied by them previous to their testifying. Dr. Boyce's conclusion was that during the afternoon Roberson had experienced an ischemia, a suppression of the flow of blood, from which he immediately recovered, and that on the second occasion he had an actual thrombosis, which occurred between the time he left his automobile and the time he stopped and grabbed his chest in pain. That was when, in his opinion, the artery stopped up, which condition caused his death five days later.
There is no disagreement among the experts testifying that the proper course and treatment to be followed for an attack of coronary thrombosis is to immediately put the patient to bed for rest. This appears to be a uniform, accepted practice among all physicians. They testified, stating that had they seen Roberson after the condition developed at the ice plant they would have placed him in bed and advised him against any physical activity. The reason therefor is evident that such activity could have precipitated and brought on the very condition that followed Roberson's rush to the fire.
Dr. John W. Deming, testifying on behalf of the defendant, admitted that the physical exertion and mental stress and strain may have precipitated plaintiff's condition by aggravating the pre-existing pathology and brought about the coronary thrombosis at that particular time. With this, plaintiff's physicians agreed, testifying they were of the opinion that the underlying pathology was in fact the arteriosclerosis; that the exertions, stress and strain of Roberson's work, superimposed upon the already diseased arteries of the heart, precipitated, aggravated and brought about the coronary thrombosis producing death. It appears, therefore, that the reasonable preponderance of the medical testimony is to the effect that Roberson's walking hurriedly to the scene of the fire and the stress and strain incidental thereto and connected with his employment, due to his already weakened physical condition, precipitated and brought about the coronary thrombosis which produced his death.
The jurisprudence is now well settled that, to constitute an accident within the meaning of the Workmen's Compensation Statute in cases where the work of the employee requires physical effort and exertion, it is not necessary that the injury from which disability follows be the result of unusual physical effort if a diseased organ gives way or its function is impaired while the laborer is discharging his usual and customary duties and disability results, for it to be compensable. Jackson v. Travelers' Ins. Co., 180 La. 43, 156 So. 169; Renfrow v. Caddo Parish Police Jury, La.App., 155 So. 291; Biggs v. Libbey-Owens-Ford Glass Co., Inc., La.App., 170 So. 273; Nickelberry v. Ritchie Grocery Co., 196 La. 1011, 200 So. 330; Hill v. J. B. Beaird Corp., La.App., 19 So.2d 295; Dortch v. Louisiana Central Lumber Co., La.App., 30 So.2d 792; Stiles v. International Paper Co., La.App., 39 So.2d 635; Lampkin v. Kent Piling Co., La.App., 34 So.2d 76; Sharp v. Esso Standard Oil Co., La.App., 72 So.2d 601; Sepulvado v. *470 Mansfield Hardwood Lumber Co., La.App., 75 So.2d 529; Kraemer v. Jahncke Services, La.App., 83 So.2d 916, 919. Some of the above, as well as other cases, were reviewed in Kraemer v. Jahncke Services, Inc., supra, wherein it was stated that, while it has been said a heart attack is not an accident within the purview of the Workmen's Compensation Law, LSA-R.S. 23:1021 et seq., yet, if an employee had a pre-existing heart condition which is aggravated by his work, excessive heat, intense hard labor, sudden fright or attack, or any other stress that might aggravate such condition and cause disability or death, such resulting disability or death would be compensable under the statute.
Summarizing its conclusions, after a review of the jurisprudence, the Orleans Court of Appeal in Kraemer v. Jahncke Services, Inc., supra, stated:
"`From the established jurisprudence a rule can be formulated that an accident must either cause or aggravate a pre-existent heart ailment before recovery can be had, and the aggravation must be due to some stress or strain, physical or mental, primarily suffered by the employee while performing his work due to excessive labor, fright, trauma, or any other cause that could aggravate the pre-existing condition; nor is it necessary that there be any great amount of physical strain or unusual exertion in the performance of the duties. It is only necessary that sufficient mental or physical strain occur during the performance of the duties, whether it be heart trouble or any other organic ailment. Nor is it necessary that the result of such stress to strain develop at the time or at the scene of employment if the stress and strain were sufficient to have caused the aggravation ultimately resulting in disability or death. The proof, of course, of the causal connection always rests with the plaintiff.'"
There is no difference in heart cases where the evidence shows a causal connection and in cases where the death or disability was brought about by an accident aggravating some other type of disease where it is established that the accident was one of the contributing causes. A question to be determined in such cases, however, is whether or not the proof is sufficient to establish a causal connection. In Sharp v. Esso Standard Oil Company, supra, recovery was permitted where a heart attack resulted from exertion, although the attack occurred after the deceased had returned to his residence. Recovery was likewise permitted in Sepulvado v. Mansfield Hardwood Lumber Company, supra, where the evidence established that decedent's death from coronary thrombosis had been caused by physical exertion attending his cutting logs with a crosscut saw in a hot sun. Recovery was likewise permitted in Calhoun v. Rayville Ice and Fuel Co., Inc., La.App., 161 So. 660, where the evidence established that the employee was afflicted with high blood pressure and was struck on the shoulder by a heavy timber, causing him to make a sudden physical exertion in an attempt to ward off the impending blow from the falling timber, on the theory that the accident injured an over-taxed heart and arteries and resulted in angina pectoris.
In Brister v. Miller, La.App., 178 So. 284, the court concluded that the evidence established that the employee died of heart failure caused from the strain and over-exertion in sawing down a tree when he was over-heated. It was held that the heart condition producing the employee's death was brought on or aggravated by his strain and exertion in an attempt to pull the saw through the tree at a rapid rate of speed at a time when he was over-heated.
Under the state of facts established by the record in this cause, our conclusion is that the death of the deceased was caused by an accident arising out of his employment; that the injury, added to the disease or previously existing body infirmity, *471 superinduced the physical disability that ended in his death and that, accordingly, the surviving widow and minor child are entitled to compensation.
Defendant, however, relies upon the principle established in the Nickelberry v. Ritchie Grocery Company case, supra, and followed by us in Hastings v. Homewood Development Company, La.App., 34 So.2d 883, to the effect that the legal requirements necessary to constitute an action are fulfilled when the facts of a case disclose that many factors, such as excessive heat, heavy lifting or straining or excessive exertion have caused or contributed to a physical breakdown or have accelerated its occurrence. We are in accord with this principle, but in the Nickelberry case plaintiff did not sustain his burden of proof. One circumstance is that the employer had no notice or knowedge of any supposed accident for more than a year following the time plaintiff claimed to have sustained an accident. Not only did he fail to prove that an accident occurred, but he did not show any causal connection between his condition, which he attributed to an accident, and his employment. To the same effect is the ruling in the Hastings case. It was only after Hastings had completed the day's work, gone home and chased some hogs that it was discovered that he was afflicted with some heart trouble. Hastings made no complaint of pain to his fellow employees before leaving his place of employment or while driving home. The evidence did not disclose that the attack complained of occurred on the job. In the instant case, Roberson was engaged in the performance of the duties of his employment at the very time that he was stricken with a sudden and violent onset of coronary thrombosis. Roberson's attack of coronary thrombosis was an unexpected and unforeseen event, which happened suddenly and violently. This comes within the definition of an accident as given in LSA-R.S. 23:1021, which, in defining "accident", reads as follows:
"`Accident' means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury."
Defendant implies some significance to the words "strenuous", "heavy", and "excessive", as ordinarily found in the decisions of similar cases in referring to an employee's work and under the conditions in which he performs his duties. These terms are relative. They do not possess the same meaning to all persons in all places and under all conditions. Labor that would be strenuous to a person in poor health, who lacked strength, power and endurance, would not necessarily be strenuous to a strong, physically robust laborer in good health. Work that would be termed "light" for a robust laborer may be most strenuous to one who has lost his strength and health through disease. In applying these terms, consideration should be given to the facts and circumstances surrounding a person's activities, particularly as to his health, strength and ability. In Roberson's condition, any labor, however slight, was heavy and strenuous; it was strenuous to himit was sufficiently strenuous to add an additional load to his already diseased heart to bring about the attack of coronary thrombosis, and ultimately his death.
As further distinguishing the instant case from those relied upon by defendant, plaintiff here has sufficiently established the occurrence of an accident which at least precipitated, brought on or accelerated a heart condition, producing a coronary thrombosis from which her husband died. This finding requires that the judgment appealed be reversed.
For the reasons assigned, it is, therefore, ordered, adjudged and decreed that the judgment appealed be annulled, avoided, reversed and set aside and that, accordingly, there now be judgment herein in favor of plaintiff, Virginia Jernigan Roberson, individually and for the use and benefit of her minor daughter, Linda Roberson, *472 against the Michigan Mutual Liability Company for the full sum and weekly compensation of $30 per week, beginning November 18, 1954, for a period of 300 weeks, with five percent per annum interest on each of said weekly installments of compensation from its maturity until paid, and for the additional sum of $297.50 for medical expense, and for $300 for funeral and incidental expenses, with legal interest on said sums from judicial demand until paid, and for all costs, including the cost of this appeal, and the expert witness fees of Drs. Frank T. Dienst, S. W. Boyce, J. A. Kopfinger and J. W. Deming in the sum of $35 each, which are hereby fixed and taxed as costs, and fixing plaintiff's attorney's fees in the sum of 20 percent of the amount recovered and collected herein, not, however, to exceed $1,000.
Reversed and rendered.