GLADNEY, Judge.
This is an action for the recovery of death benefits under the Employers’ Liability Act, LSA-R.S. 23:1021-1351, instituted by Mrs. Hazel Talbot Rodgers, on behalf of herself and her minor children, for the death of her husband, Warner Lee Rodgers. Made defendants were Roy Price and L. B. Zeagler. After trial there was judgment rejecting the demands of' plaintiff in toto and she has appealed.
The pivotal facts are either stipulated or not disputed. Rodgers was engaged in loading logs on the truck of Roy Price at the premises of Clabe Ganey when the fatal *306 accident occurred on the afternoon of December 9, 1952. Prior to this date the deceased was employed by Price, an independent logging- contractor, as a truck driver and mechanic for a daily rate of pay of eight dollars. Rodgers worked regularly while Price was engaged in logging operations for Louisiana Delta Lumber Company, which company for that period only protected Price’s employees with workmen’s compensation insurance. That job was completed shortly before the accident to Rodgers. Price was then without insurance, and, although negotiating for it, he had not obtained it at the time of the injury.
On the evening of December 8, 1952, Rodgers, who had been employed by defendant for approximately three weeks, and who had been lodging at the home of Price, asked Price for permission to handle some cut logs which were owned by Clabe Ganey, and haul them to the mill of L. B. Zeagler as he, Rodgers, “wanted to make a day”. Price, in the presence of his son, Grady Price, told Rodgers that hi's winch truck needed repair and that if he would work on the truck the next day, he would give him a day.; that he had not yet obtained workmen’s compensation insurance and did not wish Rodgers to haul logs until he had that protection. On the following morning Roy and Grady Price left on a trip to Manifest, Louisiana. When they returned during the latter part of the afternoon Roy Price found his truck and Rodgers missing from his home, and he and his son immediately drove to' the premises of Clabe Ganey, where he encountered Rodgers, assisted by Ganey, loading logs on Price’s truck with the aid of a team of. horses owned, by Ganey. The loading operations were virtually finished save for the loading of one or two logs. Price had been there no more than just a few minutes when one of the two logs which fell from the truck struck Rodgers, thereby causing his death. The occurrence is further described in the testimony of Roy Price:
“Q. Describe in your own words what you saw happen. A. Well, when I got there I was figuring on making him unload them. The skid liked (sic) about 4 inches touching the log up at the top and when the log started up. well I put my foot on the foot of the skid to keep it from kicking up and he was standing behind me with the chain rolled up and when that log started up, well he went around on the other side of the truck and when the log hit the top, well it — 2 of them busted out. Mr. Ganey said he missed the first one and run in under the other one. I didn’t see none of that.”
In reply to questioning as to why he did not instantly request Rodgers to stop using the truck in accordance with previous orders, Price answered: “Well, I started to, but I just didn’t.”
The evidence discloses also that subsequent to the death of Rodgers the truck and logs were not moved for several days after which Price hauled the logs to Zeag-ler’s sawmill and was paid by Ganey, the owner of the logs for the hauling thereof. The evidence clearly shows Ganey had no contract with either Price or Zeagler, concerning the logs, prior to the accident.
Therefore, if - legal liability exists on account of the de-ath of the deceased, it must be predicated upon the employee-employer relationship between Rodgers and Price, and further, the liability of Zeagler, if any, would be that of a remote employer under the Workmen’s Compensation Act. Two issues are presented for our consideration: the first being whether the death of Rodgers occurred during the course of and arose out of his employment, and secondly, and only then, if this question be answered affirmatively, whether Zeagler is liable as a principal contractor or remote employer. LSA-R.S. 23:1061. The trial court correctly, we think, determined both questions in the negative.
*307 In discussing the difficulty of arriving at a definite rule for determining whether or not the injury to an employee arises out of his employment, Fournet, C. J., in Edwards v. Louisiana Forestry Commission, 1952, 221 La. 818, 60 So.2d 449, 450, made the following comment:
“As Justice Sutherland says in the Cudahy case [Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418, 44 S.Ct. [153] 154, 68 L.Ed. 366]: ‘Whether a given accident is so related or incident to the business must depend upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case.’ And as Justice Provosty expresses it in the Myers case [Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. [256] 258]: ‘* * * after vain attempts at formulating some verbal test for determining when the injury has or not arisen out of the employment, the courts have come to the conclusion that each case must be determined from its own facts; that the question cannot be solved by phrases.’
* * * * * *
“ ‘The test of recovery is not a causal relation between the nature of the employment of the injured person and the accident * * *. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the “obligations or conditions” of employment create the “zone of special danger” out of which the injury arose. * * * A reasonable rescue attempt * * * may be “one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.” ’ [O’Leary v. Brown-Pacific-Maxon, Inc.,] 340 U.S. 504, 71 S.Ct. 470, 471, 95 L.Ed. 483”;
and quoted from Hartford Accident & Indemnity Company v. Cardillo, 72 App.D.C. 52, 112 F.2d 11, 14, 15, certiorari denied by the United States Supreme Court, 310 U.S. 649, 60 S.Ct. 1100, 84 L.Ed. 1415, to the effect:
" * * * no more is necessary than that the work subject the employee to a peril which comes from the fact that he is required to be in the place where it strikes when it does so. It is immaterial whether the place is the employer’s premises or a street; whether the risk arises from physical features or human agencies connected with the place; whether it is a common occurrence or an extraordinary happening; one which threatens only employees at work or others also.”
Under the facts as stated herein, the work assigned to Rodgers on the day of the accident was the repair of the truck at Price’s home. The operation of the truck and the loading of logs at Ganey’s was beyond the scope of his employment for the “obligations and conditions” of employment did not create that “zone of special danger” out of which the injury arose. The facts in the instant case clearly distinguish it from those cases in which the employee sustained injury while attentive to and about his employer’s work, but was injured while acting contrary to some order or instruction.
Counsel for appellant say that Rodgers was loading the logs with the consent of Price, otherwise, it was argued, Price would have stopped the work upon his arrival. This is an incorrect inference. The circumstances show clearly Price did not approve, but that it was too late or untimely for him to have pursued a different course of action. Price’s silence did not have the effect of altering the obligations and conditions of Rodgers’ employment.
There is no substantial evidence upon which the liability of Zeagler may be predicated. The record shows, and we think conclusively, that at the time the accident took place .Zeagler had no contractual relationship with Price, Ganey -or Rodgers. *308 However this may he, since the immediate employer herein, Price, is relieved of responsibility, none rests upon the alleged principal contractor or remote employer.
Accordingly, the judgment from which appealed is affirmed.