**NATIONAL SURETY CORPORATION and Bituminous Casualty Corporation, Appellants,**

v.

**Jewell BONDS, widow of Willie Jolliff, etc., et al., Appellees.**

**No. 17767.**

United States Court of Appeals Fifth Circuit.

Feb. 17, 1960.

Rehearing Denied April 8, 1960.

Gerard M. Dillon, Curtis, Foster & Dillon, New Orleans, La., for National Surety Corporation.

W. Ford Reese, John T. Cooper, Adams & Reese, New Orleans, La., for Bituminous Casualty Corporation.

Edgar Corey, New Orleans, La., for appellees.

Before JONES, BROWN and WISDOM, Circuit Judges.

**WISDOM, Circuit Judge.**

In this action a widow and four children were awarded death benefits under the Louisiana Workmen's Compensation Law. LSA–R.S. of 1950, 23:1021 et seq. We reverse the judgment on the ground that the decedent's accident was not one "arising out of and in the course of his employment", as required by the Act. LSA–R.S. of 1950, 23:1031.

Willie Jolliff, the plaintiff's husband, cut timber for Clifford Ellard, doing business as Ellard Pulpwood Company. Ellard had a contract to cut and haul timber on land near Covington, Louisiana, for T. L. James & Co., a company engaged in cutting, hauling, and marketing logs and timber. On Friday nights Ellard furnished Jolliff transportation from the work camp near Covington to Jolliff's home in Amite, Louisiana, a distance of about twenty-five miles. On Mondays Ellard transported Jolliff from his home back to the work camp near Covington.

On June 10, 1957, Ellard sub-contracted the cutting of the timber to Robert Fallin, but continued to do the hauling. Fallin took over most of Ellard's former employees, including Jolliff. Some time after June 10, 1957, Fallin announced at the timber camp that he would no longer furnish transportation for the workers. The testimony is conflicting as to when he made this announcement,[1] but there is evidence that one week-end intervened between the date of the announcement and the date of Jolliff's death, and there is no doubt that the employees knew and understood that transportation would not be furnished.

On Friday afternoon, June 21, 1957, Fallin paid the men their week's wages and gave them a "beer-bust" they had been promised. The next morning, in Covington, Jolliff saw Curtis Wafer, an-other employee, in a pick-up truck of Fallin's. Wafer had Fallin's permission to drive the truck about camp and to drive to Covington and Abita Springs for supplies. Wafer testified that he did not have permission to use it on the Saturday that he took it into Covington; "We had been using it during the week, week-days Mondays to Fridays". Jolliff told Wafer that Fallin had given him permission to drive the truck to his home in Amite to take grocery money to his wife and children. Wafer did not believe Jolliff: "Ain't you telling a story about this?" He told Jolliff, "If you want the truck you'll have to come back to the camp to get it." Wafer and Jolliff drove back to the camp, Wafer washing his hands of any responsibility, except to advise Jolliff to return that afternoon no later than two o'clock. He warned Jolliff, or so he testified: "As far as I am concerned Mr. Fallin is gone. When Monday morning come I'm going to tell Mr. Bob that you used his car." Fallin testified that he had never granted Jolliff permission to drive the truck and there is no evidence that Jolliff had ever driven the truck before. The truck was usually kept at camp with the key in the ignition.

Jolliff left the camp in the truck, drove to his home in Amite, then turned around and started back for Covington. On his way back from Amite the truck turned over. Jolliff was killed.

Mrs. Jolliff sued the Bituminous Casualty Corporation (the compensation insurer of Ellard) and National Surety Corporation (the insurer of James). The case was tried without a jury. The trial judge concluded that the accident arose out of and in the course of Jolliff's employment. Judgment was rendered against both insurers, in solido, for compensation at the rate of $25 a week for 400 weeks, commencing June 22, 1957.

---

1. Fallin testified that the announcement that no more transportation would be furnished was made a week or two before the accident; on cross-examination he admitted that it could have been made the Tuesday before the accident. He testified that the employees had made one trip home after the announcement and returned to camp knowing that no transportation would be furnished in the future. One of Jolliff's co-workers testified that Fallin made the announcement on the Tuesday before the accident.

■■ As Mr. Justice Murphy put it, the statutory phrase, "Arising out of and in the course of employment" is "deceptively simple and litigiously prolific." [2] The terms "arising out of" and "in the course of" are not synonymous. "*Arising out of*" suggests an "inquiry into the character or origin of the risk". "*In the course of*" brings "into focus the time and place relationship between the risk and the employment." [3] "The terms *during the course of* and *arising out of* are not independent notions which can be considered in isolation from each other. At certain times the worker will be protected against virtually any risk he may encounter. These are the times when his activities are very closely connected with his employer's business and it can be said that he is acting in direct response to the call of duty. At other times, when the activities of the worker bring him barely within the outer fringe of his employment he will be protected only against risks which can be closely associated with the nature of his duties or with the circumstances under which he is obliged to work and live. In other words, during these latter times he is within the course of employment only with reference to a fairly limited group of employment risks. Viewed in this perspective there is no real conflict between the Myers rule and the Kern rule." Malone, Louisiana Workmen's Compensation Law and Practice, § 192, p. 229 (1951).

The two leading cases in Louisiana on the statutory phrase are Myers v. Louisiana Railway & Navigation Co., 1917, 140 La. 937, 74 So. 256 and Kern v. Southport Mill, 1932, 174 La. 432, 141 So. 19. In Myers a carpenter engaged in repairing a car in a railroad yard was injured in passing between two cars on his way to where he was working when he was struck by a door blown open by a gust of wind. The court held that the accident arose out of the employment; it is sufficient if "the nature of the employment was such that risk from which the injury resulted was greater for the workman than for a person not engaged in the employment." [140 La. 937, 74 So. 259.] In Kern a pipefitter who had been instructed to do an outside job was returning to work when he was struck and killed by an automobile as he stepped out of a street car. Going beyond Myers, in which the court looked to the character of the risk as the essential point, the Court established two criteria for determining if an accident arises out of employment: "(1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) Did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?" Since the duties of the plaintiff had called him to the street where the accident occurred, the injury was compensable. The Kern criteria have guided Louisiana courts in numerous cases in which compensation was denied because the accident did not arise out of the employment. [4]

■ In Louisiana, as in most states, an accident occurring to an employee going to or returning from work does not arise out of and in the course of his employment. [5] This general rule is subject to certain exceptions. [6] For purposes of

2. Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 67 S.Ct. 801, 807, 91 L. Ed. 1208.

3. Malone, Louisiana Workman's Compensation § 162, p. 173; accord, 1 Larson, Workman's Compensation Law, § 6.00, p. 41.

4. Warren v. Globe Indemnity Co., 1950, 217 La. 142, 46 So.2d 66; Le Blanc v. Travelers Ins. Co., La.App.1953, 68 So. 2d 910; Evans v. Central Surety & Ins. Corp., La.App.1942, 10 So.2d 406; Como v. Union Sulphur, La.App.1938, 182 So. 155.

5. Malone, Louisiana Workman's Compensation § 171; 1 Larson, Workman's Compensation Laws § 15; Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Le Blanc v. Travelers Ins. Co., La.App.1953, 68 So.2d 910.

6. Attaway v. Fidelity & Cas. Co., La.App. 1949, 39 So.2d 632; Babineaux v. Giblin, La.App.1948, 37 So.2d 877.

this case, a pertinent exception to the general rule is when an employer has obligated himself, expressly or impliedly, to furnish the employee's means of transportation to and from work. It is necessary to examine the Louisiana cases dealing with this exception.

Crandall v. Philpot, La.App.1932, 142 So. 313, 316, involved facts similar to those in the present case. The employees of a highway construction crew lived in a camp near their work. The plaintiff decided to go to his home in Alexandria, Louisiana, on Saturday night, to pay his house rent and to obtain some clothes. The foreman told the employees that a truck would take them to Alexandria and that they would be picked up that night and brought back to camp. On the way to Alexandria an accident occurred in which the plaintiff was injured. The court denied recovery, stating:

> "The fact that plaintiff was being conveyed in his master's truck, at his own request, is not sufficient to bring him under the provisions of the Workmen's Compensation Act (Act No. 20 of 1914 as amended) of this state. His work for the day had ceased some two and one-half hours before. He had left the premises of his master, on his way to perform private duties of his own, in no way connected with his master's business, and not for the purpose of furthering his master's business in any way. He was no longer performing any service for his master. He was not performing any duty which he was employed to perform."

Similarly, in Ogea v. Emergency Relief Adm'n, La.App.1934, 154 So. 647, 648, the employer contracted to furnish a truck to haul the plaintiff to work. The plaintiff was injured while riding a horse to meet the truck. The court denied recovery, saying: "This right to recovery, however, is given when the employee is injured while using the conveyance furnished by his employer, unless with his employer's consent he is permitted to use some other conveyance or way of going to or from his work."

In Nugent v. Lee Lumber Co., 1926, 4 La.App. 371, the deceased employee drove an ox-team hauling logs for the employer. The employer had not contracted to furnish transportation for the decedent, but the decedent had ridden back and forth to work several times with the employer. The employer had instructed the truck drivers not to take the trucks from the camp at the end of the day. On the day of the accident the decedent requested one of the drivers to give him a ride home. The court said that the injury was not compensable:

> "The truck driver, in undertaking to carry decedent home on the truck, was acting on his own initiative and responsibility and not as an employee of Hamilton, and under these circumstances the fact that the accident occurred while the decedent was riding on a vehicle of his employer would not of itself render the employer liable for the injuries received by decedent in falling from the truck."

In Le Blanc v. Travelers Ins. Co., La. App.1953, 68 So.2d 910, the deceased employee was an emergency bridge watchman working for the highway department. Sometimes the foreman gave him a ride to work. Sometimes he rode his bicycle to work; he did on the day of the accident. When he arrived at work certain repairs on a bridge were completed. His services were not needed. He went, therefore, to a nearby store for a soft drink. On the way home from the store a truck ran over him and killed him. The Court held that the deceased was not within the course of his employment at the time the accident occurred.

Vincent v. Service Contracting, Inc., La.App.1958, 108 So.2d 281, involved an offshore worker killed while returning from work in his own car. The plaintiff and his co-workers usually met at a certain spot, then proceeded in their own cars to meet the boat that would take them to the offshore rig. Sometimes employees rode in the employer's pick-up truck. The court said that there was nothing to take the case out of the gen-

eral rule that injuries occurring while coming and going from work are not covered by workman's compensation. A definite policy of furnishing transportation was not proved.

In Banks v. Associated Indemnity Corp., 5 Cir., 1957, 161 F.2d 305, this Court was called upon to decide if an accident arose out of and in the course of employment under the Louisiana Workmen's Compensation Law. This employee, too, was an offshore rig-worker. The employer furnished transportation to and from the rig. Usually the employees stayed at the job location until the rig was finished. Bad weather developed making work on the rig impossible, so the employees decided to make a trip home in order to save living expenses. The employer consented because their presence on the rig when they were not working cost him additional expenses. He furnished his truck to transport them home and during this trip an accident occurred. This Court said that the interim trip was not within the contemplation of the contract of employment and that no emergency required Banks to make the trip home. In Banks this Court was not willing to recognize the offshore workers' desire to go home because of bad weather as an emergency. The facts of the instant case present an even weaker argument for application of the emergency doctrine.

Louisiana courts deny compensation when an accident occurs on a trip undertaken for the employee's own benefit, even if his duties require him to travel and even if the employer furnishes means of transportation. Thus, in Milner v. Louisiana Highway Commission, 1931, 17 La.App. 28, 134 So. 441, 442, the employee inspected timber and materials to be used in highway construction. The employer furnished an automobile and gave him explicit permission to drive the car to his home on the weekend. He was killed in an accident on the way home. The court denied recovery in the widow's action for compensation, saying: "His death occurred in the course of his employment, but it was during a trip undertaken for the gratification of his own personal desire, and not in the performance of service arising out of and incidental to his employment." In Warren v. Globe Indemnity Co., 1950, 217 La. 142, 46 So.2d 66, the employer furnished an automobile to a traveling salesman. On his way to have an order signed in Olla, Louisiana, the salesman drove a girl friend from Ruston to Winnfield, Louisiana. He left her at Winnfield and drove to Olla where he was unable to find the prospective vendee. He returned to Winnfield and picked up the young lady. They went to a neighboring town for a sandwich and to visit a friend. They were killed in an accident while returning to Winnfield. The salesman had intended going back to Olla that night to interview the customer. The court held that the accident did not arise out of his employment. In Evans v. Central Surety Ins. Co., La.App.1942, 10 So.2d 406, an employer provided an automobile for a traveling auditor. He and two other employees were killed while on their way to eat supper. They often talked business during the supper hour. As a rule, the decedent wrote his daily report only after supper. The court held that the employee's injury and death did not arise out of the employment.

In Rodgers v. Price, La.App.1957, 92 So.2d 305, 307, Rodgers was a truck driver and mechanic regularly employed by Price, an independent logging contractor. When the logging operation ended, Rodgers asked Price for permission to use the truck to haul logs for a third party. Price refused, because his compensation had terminated with the end of regular logging operations and because the truck needed repairs. Rodgers took the truck when Price was away. When Price arrived at the scene of the accident, a few minutes before Rodgers was killed by a log, Price did not object to the use of the truck. The court, in denying recovery because the accident did not arise out of and in the course of Rodger's employment, said: "The facts in the instant case clearly distinguish it from those cases in which the employee sustained in-

jury while attentive to and about his employer's work, but was injured while acting contrary to some order or instruction."

There are a number of cases in which an injury to an employee while coming or going from work was considered as having arisen out of employment because the employer furnished transportation. Williams v. O.K. Construction Co., La.App.1934, 151 So. 784, was probably the first case in Louisiana involving weekend transportation by the employer. Williams was hired by a subcontractor, Willson, to do construction work on a levee. Willson obligated himself to transport the workers, free of charge, every Saturday to their homes and to convey them back to the work camp on Sunday. On the return trip the truck turned over and Williams was killed. The court held that there was no difference between cases where the employer furnished daily transportation and the case before the court. The deceased was being transported to work and the accident arose out of and in the course of his employment. The present case, however, differs from Williams in two important respects: (1) Fallin had not agreed or in any manner obligated himself to transport Jolliff home and back to the camp on weekends; (2) Jolliff took Fallin's truck without Fallin's permission.[7]

We have read all the cases cited in the plaintiff's brief and numerous other cases involving an agreement to transport employees. We are unable to find a case where compensation covered an injury suffered by an employee who was not furnished transportation, who took his employer's truck without permission, and then had an accident, on a non-work day, at some distance from the work locale, during a trip made for his own benefit. In most of the cases where the injury was compensable the employer had obligated himself expressly to furnish transportation for the injured employee.[8]

In this case Fallin informed the employees that he would not furnish transportation. The plaintiff contends that he did not tell the employees until the week of the accident, that consequently Jolliff was stranded at the camp, and therefore an emergency justified his choosing a reasonable means of substitute transportation. The argument is that Jolliff had to go home on Saturday to give his wife and children money to buy groceries. Saturday is the day for country people to buy their groceries; Jolliff was an uneducated person; to him, getting the money to his wife on Saturday was an emergency. This is an appealing argument. But, if an emergency existed it was created by Jolliff. Early Friday afternoon he had finished his work, was paid, and was free to go home for the

7. "If the employer has forbidden the use of his vehicles for transportation and this is known to the employee, it is obvious that the latter cannot recover while he is riding in violation of orders." Malone, § 173, p. 210.

8. In Callihan v. Fireman's Fund Indemnity Co., La.App.1959, 110 So.2d 758, a union contract bound the employer to furnish transportation or pay mileage to the employees. No transportation was furnished. The plaintiff drove his own automobile and was paid mileage. On the way home from work the plaintiff was injured in an auto accident. The court said that the injury arose out of and during the course of his employment. See also Cardillo v. Liberty Mutual Ins. Co., 1947, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028, for a case involving essentially the same set of facts where the United States Supreme Court held that the accident arose out of and in the course of employment under the terms of the Workmen's Compensation Act of District of Columbia, D.C.Code 1951, § 36–501 et seq. In Baker v. Colbert, 1931, 17 La.App. 518, 136 So. 210, the employer transported the employees to work daily and back home at the end of the day's work. A flood made it impossible to cross a bayou in the truck, so the employer's foreman hired a ferry. The ferry capsized. The employee's dependents were allowed compensation for his death. The testimony of the employees established that there was a definite agreement for free transportation. The employer's foreman paid the employees' fares on the ferry and they were under his direct supervision when the accident occurred.

weekend. He was not stranded in a work-camp; he was in the town of Covington, not far from Amite, Friday afternoon and Friday night and a good part of Saturday morning. He was less concerned with the importance of getting money home to buy groceries than he was with attending the "beer-bust" and staying in Covington Friday night. Saturday was not a work day. To ask that the Court recognize that an emergency arose the next day is stretching the emergency concept beyond the breaking point. The entire argument concerning an emergency doctrine presupposes that the employer was obligated, expressly or impliedly, to furnish transportation. Here, however, Fallin had specifically instructed the men that no transportation would be furnished. Accordingly, we find nothing in this case making inapplicable the general rule that injuries occurring while coming to or going from work do not arise out of and in the course of employment.

In an excellent brief, counsel for the plaintiff has pointed out that a liberal interpretation must be given to the Louisiana Workmen's Compensation Act so that the employer makes recompense for the human wreckage wrought by the dangers of modern industry. The plaintiff relies strongly on O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 71 S.Ct. 470, 471, 95 L.Ed. 483 in which the United States Supreme Court observed: "The test of recovery is not a causal relation between the nature of the employment of the injured person and the accident. * * * Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." The plaintiff contends that the "zone of spe-

cial danger" doctrine, or the "positional risk" doctrine, as exemplified in Edwards v. Louisiana Forestry Commission, 1952, 221 La. 818, 60 So.2d 449 and Livingston v. Henry & Hall, La.App. 1952, 59 So.2d 892 supports the conclusion that Jolliff's injury was one arising out of and in the course of his employment.[9] In Edwards the plaintiff was a forester who was injured while rushing down the steps of a fire-tower to rescue a child from a rabid dog. The Court held for the plaintiff, quoting the United States Supreme Court's observation on the "zone of special danger". But Edwards' duties as a fire-towerman required him to be at the scene of the accident. It was a regular work-day for him. He did the natural, expected thing in attemping to rescue the child. He came within the Cardozo maxim: "Danger invites rescue".[10] In Livingston the employee was a truck driver and laborer employed by a road contractor. He was killed on the job by a jealous husband. Relying chiefly on the "zone of special danger" test, as applied in Edwards, the court held that the death was compensable since the decedent's employment required him to be where he was when he was killed. But in Livingston the deceased employee was on the job performing his duties as an employee when he was killed. In this case Jolliff was not on the job but attending to his own affairs. Even the liberal "positional risk" doctrine cannot be extended to an injury to an employee off-duty, on a mission of his own, away from his work locale.

■ We "live in a social age and our sympathies, judicial and personal, [may be] allied with the claimant * * *"[11] but we are bound by the legislative restriction that the injury must "arise out of and in the course of the employment". And we are bound to take the Louisiana

9. Larson points out that few courts have been willing to accept the full implication of the "positional risk" doctrine. 1 Larson, Workman's Compensation Laws § 6.40.

10. Wagner v. International Railway Co., 1921, 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (a tort case).

11. Livingston v. Henry & Hall, La.App. 1952, 59 So.2d 892, 897 (dissent).

law as we find the Louisiana courts to have interpreted it.

We hold that the injuries suffered by the plaintiff's deceased husband did not arise out of and in the course of his employment. This holding makes it unnecessary to decide other questions raised by this appeal.

Reversed.