ELLIS, Judge.
On April 13, 1962, Albertha Dyson was driving west on the Airline Highway in Baton Rouge near its intersection with McClellan Drive. The defendant, Emmitt S. McDaniel, before turning into the highway, was driving his truck along McClellan Drive. In the truck was Elizabeth Hodges Raney, a guest passenger. A collision occurred between the McDaniel truck and the Dyson automobile on the Airline Highway and the trial judge correctly found this accident was caused solely by the negligence of the defendant, Emmitt S. McDaniel, in the operation of his truck and that Al-bertha Dyson was in no way contributorily negligent. This finding is not disputed on appeal, the only issues before this court being whether or not, at the time of the accident, Emmitt S. McDaniel was within the scope of his employment so as to render Robert L. Norton d/b/a Quality Home *595 Builders liable under the doctrine of re-spondeat superior and, also, the question of adequacy of the award.
The undisputed facts reveal that Emmitt McDaniel was employed by Robert Norton d/b/a Quality Home Builders, as a carpenter. His job was to do finishing work on homes built by Norton and on the date of the accident, the defendant, Emmitt S. McDaniel, had been working at Tristan Village, a subdivision.
McDaniel testified that he left Tristan Village and drove to his home to pick up Elizabeth Hodges Raney who was employed by him to care for his minor children. He stated his intention was to take Mrs. Raney to her home on Cadillac Street and then return to Tristan Village to lock the houses which had been left open for the convenience of the building inspectors. Mrs. Ran-ey lived between the McDaniel home and Tristan Village so that an approximate two mile round trip deviation would be required to deliver Mrs. Raney to her home.
The truck involved in the accident was owned by Emmitt S. McDaniel and he received from Robert L. Norton the sum of $15.00 per week for gasoline but this sum far exceeded the amount actually expended. McDaniel testified he used the truck to carry his carpenter tools and other small loads in connection with his job and the trial court concluded, and we believe correctly so, that the McDaniel truck was, in effect, hired or leased by the employer, Robert L. Norton, to be driven by the employee. This belief and conclusion is reinforced by the fact that after the accident Robert L. Norton leased another truck from Polk Chevrolet for $40.00 per month and furnished it to McDaniel.
In a case where the employee is driving the employer’s vehicle at the time of an accident, the presumption arises that the employee was within the scope of his employment and the burden is on the employer to refute this presumption. Futch v. W. Horrace Williams Co. et al., La.App., 26 So.2d 776.
In the instant case the trial court held that at the time of the accident, McDaniel was not within the scope of his employment and, therefore, refused, under the theory of re-spondeat superior, to cast Robert L. Norton for damages. This court is of the opinion that that conclusion is correct.
In the case of Mabry v. Fidelity & Casualty Co. of New York, La.App., 155 So.2d 44 at 45, we find the following language:
“In determining whether an accident arose out of an employment, it is necessary to consider only the questions: (1) Was the employee then engaged in his employer’s business and not merely pursuing his own business or pleasure, and (2) did the necessities of the employer’s business reasonably require the presence of the employee at the place of the accident at the time the accident occurred? Kern v. Southport Mill, 174 La. 432, 141 So. 19.
“This rule was cited with approval in later cases. Harvey v. Caddo DeSoto Cotton Oil Co., 199 La. 720, 6 So.2d 747; Nesmith v. Reich Bros., 203 La. 928, 14 So.2d 767; Laine v. Junca, 207 La. 280, 21 So.2d 150; Warren v. Globe Indemnity Co., 217 La. 142, 46 So.2d 66; Williams v. United States Casualty Company, La.App. 4th Cir., 1962, 145 So.2d 592 (writ denied).”
Applying that test to the facts of the case at bar, the conclusion is inescapable that McDaniel, at the time of the accident, was engaged in his own business. The employer was not concerned with McDaniel’s obligation to furnish transportation for his maid as this was only a matter of concern to McDaniel and his maid. In the Mabry case the employee was injured when he slipped on an icy sidewalk in front of a bakery where he was going to get bread for his wife to feed the birds. In the instant case the employee, McDaniel, was no less engaged in his own business, that of furnishing transportation to his maid.
*596 Likewise, the second test as laid down in the above question has not been met in this instance, for the employer’s business did not require McDaniel to be on any errand at this time but rather required him to be present at Tristan Village for the purpose of working on the houses or watching the houses while waiting for the arrival of the inspectors.
The doctrine of re-entry has been urged on this court by the plaintiff but we find it to be inapplicable in the present case. In 14 Tulane Law Review at page 72 which was followed in the case of Rhea v. Farrington, 78 So.2d 47 at 53 the author sets forth three conditions which must be met before a deviating employee can be found to have re-entered his employment. These are: (1) the trip on which the employee is engaged must have had its origin in the employer’s business; (2) the mental purpose of the employee following this deviation must be to return to his next duty, whether it be to continue his work or to return the vehicle he is using to the place it belongs, and (3) the purpose to return must have been put into effect by starting his return journey.
In the case at bar the first condition has not been met in that the trip on which McDaniel was engaged did not have its origin in the employer’s business at all but was for the sole purpose and convenience of McDaniel and his maid. As has already been pointed out, McDaniel’s duties that day were at Tristan Village and the trip was not in any way reasonably connected with his employer’s business.
It is on this ground that Embry v. Reserve Natural Gas Co. of La., 12 La.App. 97, 124 So. 572 must be distinguished. In the Em-bry case, the employee was instructed to pick up some dynamite and deliver it to Cotton Valley. He deviated from this errand to provide transportation to a Negro woman and to secure breakfast at his home. Nevertheless, his employer’s business required that he be on the errand.
O’Brien v. Traders & General Insurance Company, La.App., 136 So.2d 852, is relied on heavily by the plaintiffs. In that case the defendant’s salesman was instructed to be present on Monday morning at a meeting in Baton Rouge. He was reimbursed for his mileage expense and at the time of the accident on Sunday evening was within 25 miles of Baton Rouge on a direct route. The court in that case found that the salesman was within the scope of his employment and we see no inconsistency in the O’Brien case and the holding of the lower court in the case at bar. In the O’Brien case the master’s business required that the salesman be in this location at this time and though the salesman had previously deviated from a direct route in order to visit relatives he had certainly returned from that deviation and was clearly within the scope of his master’s business.
As to the question of quantum, the trial judge awarded Albertha Dyson $750.00 for a mild concussion resulting in headaches for about three weeks, and a slight injury to her knee, a blow to the abdomen, and a mild cervical strain. In addition, Wesley Dyson received the sum of $804.00 as special damages on behalf of the community. The trial court awarded Mrs. Raney the sum of $1,500.00 for a mild cerebral concussion, a fractured rib, and a severe ankle sprain as she also had multiple abrasions, contusions, and bruises on the entire right side of her body. Mrs. Raney also received the sum of $745.30 as special damages. The court stated that “these are not adequate damages, but the award is reduced because of the fact that Mr. McDaniel is not financially able to pay the amount that should be assessed.”
Considering the poor financial condition of the defendant, this court cannot say that the amount of damages awarded is erroneous and therefore the judgment of the trial court, in all respects, is affirmed.
Affirmed.